## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE REGISTERED HOLDERS OF WELLS FARGO COMMERCIAL MORTGAGE TRUST 2016-C34, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2016-C34,<br><br>Plaintiff,<br><br>v.<br><br>HORSHAM PROPERTY ASSOCIATES, LP,<br><br>Defendant. | CIVIL ACTION<br><br>NO.   20   1301<br><br>FILED<br>MAR 05 2020<br>Clerk<br>Dep. Clerk<br>By |

## COMPLAINT

Plaintiff, Wilmington Trust, National Association, as Trustee for the benefit of the registered holders of Wells Fargo Commercial Mortgage Trust 2016-C34, Commercial Mortgage Pass-Through Certificates, Series 2016-C34 ("Lender"), acting by and through its special servicer, LNR Partners, LLC ("LNR"), for its complaint against defendant, Horsham Property Associates, LP ("Borrower"), avers as follows:

## I.   PARTIES, JURISDICTION AND VENUE

1.      Lender is a national banking association with its main office, as designated in its Articles of Association, located in Wilmington, Delaware.  Non-party LNR is the special servicer for Lender with respect to the Loan (as defined below).

2.      Borrower is a Pennsylvania limited partnership with its principal place of business c/o Endurance Real Estate Group, LLC, 4 Radnor Corporate Center, Suite 105, Radnor,

Pennsylvania 19087. Upon information and belief, none of Borrower's partners is a citizen of the State of Delaware.

3.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the matter is controversy exceeds $75,000 and the action is between citizens of different states.

4.     Venue exists in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) because the real property that is the subject of this action is situated in this district.

## II.     FACTS

### A.     The Original Loan Transaction

5.     On or about October 30, 2015, Silverpeak Real Estate Finance LLC ("Original Lender") issued to Borrower a commercial mortgage loan in the principal amount of $28,000,000 (the "Loan").

6.     The Loan is evidenced by a Promissory Note dated October 30, 2015, executed by Borrower in favor of Original Lender in the principal amount of $28,000,000 (the "Note"), a copy of which is attached hereto as Exhibit A.

7.     To secure repayment on the Note, Borrower executed in favor of Original Lender a Mortgage, Assignment of Leases and Rents and Security Agreement effective as of October 30, 2015 (the "Mortgage"), with respect to real and other property located at 200 Precision Drive and 425 Privet Road in Horsham, Montgomery County, Pennsylvania. A copy of the Mortgage is attached hereto as Exhibit B. The Mortgage was recorded with the Recorder of Deeds for Montgomery County, Pennsylvania (the "Recorder"), on November 2, 2015, as Instrument No. 2015083324 in Mortgage Book 14037, page 1117.

8.     The Loan is also evidenced by a Loan Agreement between Borrower and Original Lender dated as of October 30, 2015 (the "Loan Agreement"), a copy of which is attached hereto as Exhibit C. The Note, the Mortgage, the Loan Agreement and various other documents

2

executed by Borrower in favor of Original Lender with respect to the Loan are collectively referred to herein as the "Loan Documents."

**B.      The First Assignment of the Loan**

9.      The Loan was subsequently securitized and assigned by Original Lender to SPREF WH III LLC ("First Assignee") (the "First Loan Assignment") pursuant to an Omnibus Assignment, a copy of which is attached hereto as Exhibit D.

10.      In connection with the First Loan Assignment, Original Lender executed for the benefit of First Assignee an Allonge to the Note, a copy of which is attached hereto as Exhibit E.

11.      Also in connection with the First Loan Assignment, Original Lender executed in favor of First Assignee an Assignment and Assumption of Interest under Mortgage, Assignment of Leases and Rents and Security Agreement, a copy of which is attached hereto as Exhibit F, which was recorded with the Recorder on November 10, 2015, as Instrument No. 2015085708 in Mortgage Book 14041, page 1873.

**C.      The Second Assignment of the Loan**

12.      Pursuant to a General Assignment, a copy of which is attached hereto as Exhibit G, First Assignee assigned the Loan to Lender (the "Third Loan Assignment").

13.      In connection with the Second Loan Assignment, First Assignee executed for the benefit of Lender an Allonge to the Note, a copy of which is attached hereto as Exhibit H.

14.      Also in connection with the Second Loan Assignment, First Assignee executed in favor of Lender an Assignment of Mortgage, Assignment of Leases and Rents and Security Agreement, a copy of which is attached hereto as Exhibit I, which was recorded with the Recorder on July 7, 2016, as Instrument No. 2016049203 in Mortgage Book 14162, page 1157.

DMEAST #39304660 v1

D.    **Relevant Contractual Provisions**

15.    The Mortgage secures, *inter alia*, obligations owed by Borrower under the Note and the other Loan Documents.  (*See* Mortgage at 1.)

16.    Borrower is the owner of the real property located at 200 Precision Drive and 425 Privet Road in Horsham, Montgomery County, Pennsylvania, as more fully described in Exhibit "A" to the Mortgage (the "Premises"), together with the Improvements thereon as defined in the Mortgage.

17.    The Mortgage creates a first priority lien on and security interest in all of Borrower's right, title and interest in and to the Premises and the Improvements, together with all other real and personal property owned by Borrower and collectively defined in the Mortgage as the "Mortgaged Property."

18.    The Loan Agreement requires that Borrower pay to Lender on the 6th day of every month, beginning on December 6, 2019, and for the remainder of the term of the Loan, a payment of principal and interest in the amount of $146,061.25 (the "Monthly Debt Service Payment Amount").  (Loan Agreement § 2.2.1.)

19.    The Loan Agreement provides that, if any sum due under the Loan Documents is not paid by Borrower on the date on which it is due:

> Borrower shall pay to Lender upon demand an amount equal to the lesser of five percent (5%) of such unpaid sum or the maximum amount permitted by applicable law (the "***Late Payment Charge***"), in order to defray the expense incurred by Lender in handling and processing such delinquent payment and to compensate Lender for the loss of the use of such delinquent payment.

(Loan Agreement § 2.5.3.)

20.    The Loan Agreement defines an Event of Default to exist if "any portion of the Debt is not paid when due."  (Loan Agreement § 8.1(a).)  The Debt comprises "the unpaid

4

Principal, all interest accrued and unpaid thereon, any Yield Maintenance Premium and all other sums due to Lender in respect of the Loan or under any Loan Document." (*Id.* at 4.)

21.     The Loan Agreement provides that, "[a]fter the occurrence and during the continuance of an Event of Default, the entire unpaid Debt shall bear interest at the Default Rate," which is defined as "a rate per annum equal to the lesser of (i) the maximum rate permitted by applicable law, or (ii) five percent (5%) above the Interest Rate [of 4.75% per annum], compounded monthly." (*Id.* § 2.2.2 & at 4.)

22.     The Loan Agreement also provides that:

> If prior to the Stated Maturity Date the Debt is accelerated by reason of an Event of Default, then Lender shall be entitled to receive, in addition to the unpaid Principal and accrued interest and other sums due under the Loan Documents, an amount equal to the Yield Maintenance Premium applicable to such Principal so accelerated.

(Loan Agreement § 2.3.1.)

23.     The Loan Agreement further provides that, upon the occurrence of an Event of Default, Lender may "declar[e] the Debt to be immediately due and payable (including unpaid interest, Default Rate interest, Late Payment Charges, Yield Maintenance Premium and any other amounts owing by Borrower), without notice or demand." (Loan Agreement § 8.2.1; *accord* Note at 1; Mortgage § 10(a)(i).)

24.     Section 10 of the Mortgage provides that, upon the occurrence of any Event of Default, Lender may "institute a proceeding . . . for the complete foreclosure of this Mortgage." (Mortgage § 10(a)(ii).)

25.     The Mortgage also provides that:

> All costs and expenses of Mortgagee in exercising its rights and remedies under this Paragraph 10 (including reasonable attorneys' fees and disbursements to the extent permitted by law), shall be paid by Mortgagor immediately upon notice from Mortgagee, with interest at the Default Rate for the period after notice from

5

Mortgagee, and such costs and expenses shall constitute a portion of the Debt and shall be secured by this Mortgage.

(Mortgage § 10(h).)

### E.  Borrower's Default on its Obligations

26.     Beginning with the Monthly Payment Date of December 6, 2019, Borrower failed to pay to Lender the Monthly Debt Service Payment Amount.

27.     Borrower's failure to make the required monthly payments constitutes an Event of Default under Loan Documents.  (*See* Loan Agreement § 8.1(a).)

28.     Lender, through LNR, provided a Notice of Default to Borrower by letter dated December 16, 2019, a copy of which is attached hereto as Exhibit J, which advised Borrower in relevant part that "Borrower is in default under the Note and other Loan Documents by virtue of, among other things, its failure to pay all amounts when due thereunder."  (Notice of Default at 1.)

29.     Notwithstanding the Notice of Default, Borrower failed to cure the ongoing Event of Default.

30.     Lender, through its counsel, provided a Notice of Acceleration to Borrower by letter dated December 23, 2019, a copy of which is attached hereto as Exhibit K, which advised Borrower that, "AS OF THE DATE HEREOF: (A) THE EVENT OF DEFAULT PREVIOUSLY IDENTIFIED IN THE NOTICE OF DEFAULT HAS NOT BEEN CURED AND IS CONTINUING."  (Notice of Acceleration at 2.)

31.     The Notice of Acceleration further advised Borrower that:

AS A RESULT OF THE OCCURRENCE AND CONTINUANCE OF THE EVENT OF DEFAULT DESCRIBED IN THE NOTICE OF DEFAULT, (A) THE DEBT SECURED BY THE MORTGAGE IS HEREBY ACCELERATED AND DECLARED TO BE IMMEDIATELY DUE AND PAYABLE, (B) DEMAND IS HEREBY MADE OF BORROWER FOR THE IMMEDIATE AND FULL

6

PAYMENT OF THE DEBT, AND (C) INTEREST WILL CONTINUE TO ACCRUE AT THE DEFAULT RATE UNTIL THE DEBT IS PAID IN FULL.

(Notice of Acceleration at 2.)

32.     To date, Borrower has failed to pay the Debt in full or otherwise cure the ongoing Event of Default.

33.     Accordingly, Lender brings this action to foreclose the Mortgage.

**F.      Lender's Damages**

34.     The following amounts are due and owing by Borrower under the Note and the Mortgage as of February 6, 2020, without defense, deduction, offset, recoupment, or counterclaim:

| | |
|---|---|
| Principal Balance | $27,964,772.08 |
| Note Rate Interest (12/6/19-2/6/20) | 228,767.38 |
| Default Interest (12/6/19-2/6/20) | 241,003.47 |
| Late Fees | 10,042.89 |
| Yield Maintenance Premium | 4,942,825.61 |
| Appraisal Fees | 10,300.00 |
| Inspection Fees | 330.00 |
| Legal Fees | 4,937.55 |
| Other Charges | 693.99 |
| Title Expense | 73.55 |
| Master Servicer Payoff Processing Fee | 1,050.00 |
| *Credit – Escrow Funds* | *(230,457.25)* |
| *Credit – Reserve Funds* | *(4,390,027.89)* |
| *Lockbox Funds* | *(320,602.60)* |
| TOTAL AMOUNT DUE a/o 2/6/20 | $28,463,708.78 |

7

35.     Additional Note and Default interest in the combined amount of $7,573.80 per diem, together with other fees, charges and costs recoverable under the Loan Documents, have continued and continue to accrue on the Loan since February 7, 2020.

## COUNT ONE – MORTGAGE FORECLOSURE

36.     Paragraphs 1 through 35 of this Complaint are incorporated herein by reference.

37.     Borrower executed the Note, which is secured by the Mortgage, in favor of Lender.

38.     Borrower has defaulted on its obligations under the Note, the Mortgage, the Loan Agreement and the other Loan Documents.

39.     Lender is authorized by the Mortgage and by Pennsylvania law to foreclose the Mortgage in the event of a default by Borrower.

40.     There is currently due and owing on the Loan the sum of $28,463,708.78, together with accruing default interest, fees, charges and costs recoverable under the Loan Documents.

DMEAST #39304660 v1

WHEREFORE, Lender asks that a judgment in mortgage foreclosure be entered in its favor and against Borrower in the amount of $28,463,708.78, together with additional accrued and accruing Note and Default Interest in the combined amount of $7,573.80 per diem, fees, charges and costs recoverable under the Loan Documents, and that Lender be awarded such other and further relief as the Court in its discretion may deem equitable and just.

Dated:  March 5, 2020

Raymond A. Quaglia, PA ID No. 63146
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
(215) 665-8500
quaglia@ballardspahr.com

Counsel for Plaintiff

DMEAST #39304660 v1

# EXHIBIT A

## PROMISSORY NOTE

$28,000,000.00
New York, New York
October 30, 2015

FOR VALUE RECEIVED, **HORSHAM PROPERTY ASSOCIATES, LP,** a Pennsylvania limited partnership, as maker, having its principal place of business at c/o Endurance Real Estate Group, LLC, 1 Bala Avenue, Suite 502, Bala Cynwyd, Pennsylvania 19004 ("*Borrower*"), hereby unconditionally promises to pay to the order of **SILVERPEAK REAL ESTATE FINANCE LLC**, as lender, having an address at 1330 Avenue of the Americas, New York, New York 10019 (together with its successors and/or assigns, "*Lender*"), or at such other place as the holder hereof may from time to time designate in writing, the principal sum of TWENTY-EIGHT MILLION AND NO/100 DOLLARS ($28,000,000.00), or so much thereof as is advanced pursuant to that certain Loan Agreement dated the date hereof between Borrower and Lender (as the same may be amended, modified, supplemented, replaced or otherwise modified from time to time, the "*Loan Agreement*"), in lawful money of the United States of America, with interest thereon to be computed from the date of this Promissory Note (this "*Note*") at the Interest Rate (as defined in the Loan Agreement), and to be paid in accordance with the terms of this Note and the Loan Agreement. All capitalized terms not defined herein shall have the respective meanings set forth in the Loan Agreement.

## PAYMENT TERMS

Borrower agrees to pay the principal sum of this Note and interest on the unpaid principal sum of this Note and all other amounts due under the Loan Agreement and the other Loan Documents from time to time outstanding, at the rates and at the times specified in the Loan Agreement, and the outstanding balance of the principal sum of this Note and all accrued and unpaid interest thereon and all other amounts due under the Loan Agreement and the other Loan Documents shall be due and payable on the Maturity Date.

## DEFAULT AND ACCELERATION

The Debt shall without notice become immediately due and payable at the option of Lender upon the happening of any Event of Default.

## LOAN DOCUMENTS

This Note is secured by the Mortgage and the other Loan Documents. All of the terms, covenants and conditions contained in the Loan Agreement, the Mortgage and the other Loan Documents are hereby made part of this Note to the same extent and with the same force as if they were fully set forth herein. In the event of a conflict or inconsistency between the terms of this Note and the Loan Agreement, the terms and provisions of the Loan Agreement shall govern.

63056282

## SAVINGS CLAUSE

Notwithstanding anything to the contrary contained herein, (a) all agreements and communications between Borrower and Lender are hereby and shall automatically be limited so that, after taking into account all amounts deemed to constitute interest, the interest contracted for, charged or received by Lender shall never exceed the maximum nonusurious interest rate, if any, that at any time or from time to time may be contracted for, taken, reserved, charged or received on the indebtedness evidenced by this Note, under the laws of any Governmental Authority whose laws are held by any court of competent jurisdiction to govern the interest rate provisions of the Loan (the "Maximum Legal Rate"), (b) in calculating whether any interest exceeds the Maximum Legal Rate, all such interest shall be amortized, prorated, allocated and spread over the full amount and term of all principal indebtedness of Borrower to Lender, and (c) if through any contingency or event, Lender receives or is deemed to receive interest in excess of the Maximum Legal Rate, any such excess shall be deemed to have been applied toward the payment of the principal of any and all then outstanding indebtedness of Borrower to Lender, or if there is no such indebtedness, shall immediately be returned to Borrower.

## NO ORAL CHANGE

This Note may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party(ies) against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

## WAIVERS

Borrower and all others who may become liable for the payment of all or any part of the Debt do hereby jointly and severally waive presentment and demand for payment, notice of dishonor, notice of intention to accelerate, notice of acceleration, protest and notice of protest and non-payment and all other notices of any kind. No release of any security for the Debt or extension of time for payment of this Note or any installment hereof, and no alteration, amendment or waiver of any provision of this Note, the Loan Agreement or the other Loan Documents made by agreement between Lender and any other Person shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrower or any other Person who may become liable for the payment of all or any part of the Debt under this Note, the Loan Agreement or the other Loan Documents. No notice to or demand on Borrower shall be deemed to be a waiver of the obligation of Borrower or of the right of Lender to take further action without further notice or demand as provided for in this Note, the Loan Agreement or the other Loan Documents. If Borrower is a partnership or limited liability company, the agreements herein contained shall remain in force and be applicable, notwithstanding any changes in the individuals or entities comprising the partnership or limited liability company, and the term "Borrower," as used herein, shall include any alternate or successor partnership or limited liability company, but any predecessor partnership or limited liability company and its partners or members shall not thereby be released from any liability. If Borrower is a corporation, the agreements contained herein shall remain in full force and be applicable, notwithstanding any changes in the shareholders comprising, or the officers and directors relating to, the corporation, and the term "Borrower," as used herein, shall include any

2

alternative or successor corporation, but any predecessor corporation shall not be relieved of liability hereunder. (Nothing in the foregoing two sentences shall be construed as a consent to, or a waiver of, any prohibition or restriction on transfers of interests in such partnership, limited liability company or corporation which may be set forth in the Loan Agreement, the Mortgage or any other Loan Document.)

## TRANSFER

Upon the transfer of this Note by Lender, Borrower hereby waiving notice of any such transfer, Lender may deliver all the collateral mortgaged, granted, pledged or assigned pursuant to the Loan Documents, or any part thereof, to the transferee who shall thereupon become vested with all the rights herein or under applicable law given to Lender with respect thereto, and Lender shall thereafter forever be relieved and fully discharged from any liability or responsibility in the matter; but Lender shall retain all rights hereby given to it with respect to any liabilities and the collateral not so transferred.

## EXCULPATION

The provisions of <u>Section 10.1</u> of the Loan Agreement are hereby incorporated by reference into this Note to the same extent and with the same force as if fully set forth herein.

## GOVERNING LAW; JURISDICTION; SERVICE OF PROCESS

**THIS NOTE WAS NEGOTIATED IN THE STATE OF NEW YORK, AND MADE BY BORROWER AND ACCEPTED BY LENDER IN THE STATE OF NEW YORK, AND THE PROCEEDS OF THIS NOTE WERE DISBURSED FROM THE STATE OF NEW YORK, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS NOTE AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICT OF LAWS) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA.  TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS NOTE AND THIS NOTE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK PURSUANT TO SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW.**

ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST LENDER OR BORROWER ARISING OUT OF OR RELATING TO THIS NOTE MAY AT LENDER'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY OF NEW YORK, PURSUANT TO SECTION 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, AND BORROWER WAIVES ANY OBJECTIONS

WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND BORROWER HEREBY IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING.  BORROWER DOES HEREBY DESIGNATE AND APPOINT:

> CCS Global Solutions, Inc. ("CCS")
> 530 Seventh Avenue, Suite 909
> New York, NY 10018

AS ITS AUTHORIZED AGENT TO ACCEPT AND ACKNOWLEDGE ON ITS BEHALF SERVICE OF ANY AND ALL PROCESS WHICH MAY BE SERVED IN ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY FEDERAL OR STATE COURT IN NEW YORK, NEW YORK, AND BORROWER AGREES THAT SERVICE OF PROCESS UPON SAID AGENT AT SAID ADDRESS AND WRITTEN NOTICE OF SAID SERVICE MAILED OR DELIVERED TO BORROWER IN THE MANNER PROVIDED HEREIN SHALL BE DEEMED IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON BORROWER IN ANY SUCH SUIT, ACTION OR PROCEEDING IN THE STATE OF NEW YORK. BORROWER (I) SHALL GIVE PROMPT NOTICE TO LENDER OF ANY CHANGED ADDRESS OF ITS AUTHORIZED AGENT HEREUNDER, (II) MAY AT ANY TIME AND FROM TIME TO TIME DESIGNATE A SUBSTITUTE AUTHORIZED AGENT WITH AN OFFICE IN NEW YORK, NEW YORK (WHICH SUBSTITUTE AGENT AND OFFICE SHALL BE DESIGNATED AS THE PERSON AND ADDRESS FOR SERVICE OF PROCESS), AND (III) SHALL PROMPTLY DESIGNATE SUCH A SUBSTITUTE IF ITS AUTHORIZED AGENT CEASES TO HAVE AN OFFICE IN NEW YORK, NEW YORK OR IS DISSOLVED WITHOUT LEAVING A SUCCESSOR.  NOTHING CONTAINED HEREIN SHALL AFFECT THE RIGHT OF LENDER TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR TO COMMENCE LEGAL PROCEEDINGS OR OTHERWISE PROCEED AGAINST BORROWER IN ANY OTHER JURISDICTION.

### WAIVER OF JURY TRIAL

**BORROWER HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND FOREVER WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST, WITH REGARD TO THIS NOTE, THE MORTGAGE OR THE OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. LENDER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY BORROWER.**

### SUCCESSORS AND ASSIGNS

This Note shall be binding upon, and shall inure to the benefit of, Borrower and Lender and their respective successors and permitted assigns.  Lender shall have the right to assign or transfer its rights under this Note in connection with any assignment of the Loan and the Loan Documents.  Any assignee or transferee of Lender shall be entitled to all the benefits afforded to Lender under this Note.  Borrower shall not have the right to assign or transfer its rights or obligations under this Note without the prior written consent of Lender, as provided in the Loan Agreement, and any attempted assignment without such consent shall be null and void.

### NOTICES

All notices or other written communications hereunder shall be delivered in accordance with Section 6.1 of the Loan Agreement.

### JOINT AND SEVERAL LIABILITY

If Borrower consists of more than one Person, the obligations and liabilities of each such Person constituting Borrower hereunder and under the other Loan Documents shall be joint and several.

### [NO FURTHER TEXT ON THIS PAGE]

IN WITNESS WHEREOF, Borrower has duly executed this Note as of the day and year first above written.

**HORSHAM PROPERTY ASSOCIATES, LP**

By:    Horsham Property General Partner, Inc.
       Its sole general partner

**ATTEST:**

By: _____
    Name: William A. White
    Title:  Secretary

By: _____
    Name: Benjamin I. Cohen
    Title:  President

63056282

# EXHIBIT B

ALMN 3165

 

| | |
|---|---|
| **RECORDER OF DEEDS**<br>**MONTGOMERY COUNTY**<br>*Nancy J. Becker*<br><br>One Montgomery Plaza<br>Swede and Airy Streets ~ Suite 303<br>P.O. Box 311 ~ Norristown, PA 19404<br>Office: (610) 278-3289 ~ Fax: (610) 278-3869 | **MTG BK 14037 PG 01117 to 01137**<br>**INSTRUMENT_# : 2015083324**<br>**RECORDED DATE: 11/02/2015 02:36:13 PM**<br><br><br>3268565-0016Z<br><br>**MONTGOMERY COUNTY ROD** |

**OFFICIAL RECORDING COVER PAGE**       Page 1 of 21

| | |
|---|---|
| **Document Type:** Mortgage<br>**Document Date:** 10/28/2015<br>**Reference Info:** | **Transaction #:** 3288190 - 3 Doc(s)<br>**Document Page Count:** 20<br>**Operator Id:** sford |
| **RETURN TO:** (Simplifile)<br>Land Services USA (West Chester 2)<br>1 S Church Street<br>West Chester, PA 19382<br>(610) 429-3145 | **PAID BY:**<br>LAND SERVICES USA WEST CHESTER 2 |

**\* PROPERTY DATA:**

| | | |
|---|---|---|
| Parcel ID #: | 36-00-09872-04-6 | 36-00-09946-00-8 |
| Address: | 200 PRECISION RD | 425 PRIVET RD |
| | PA | PA |
| Municipality: | Horsham Township (100%) | Horsham Township (100%) |
| School District: | Hatboro-Horsham | Hatboro-Horsham |

**\* ASSOCIATED DOCUMENT(S):**

| | |
|---|---|
| **FEES / TAXES:**<br>Recording Fee:Mortgage     $95.00<br>Additional Pages Fee       $32.00<br>Additional Parcels Fee     $15.00<br>Affordable Housing Pages   $64.00<br>Affordable Housing Parcels   $1.00<br>NonCompliance Fee        $25.00<br><br>**Total:**               $232.00 | MTG BK 14037 PG 01117 to 01137<br>Recorded Date: 11/02/2015 02:36:13 PM<br><br>I hereby CERTIFY that this document is recorded in the Recorder of Deeds Office in Montgomery County, Pennsylvania.<br><br><br><br>**Nancy J. Becker**<br>**Recorder of Deeds** |

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

11/02/2015  02:36:13 PM                    MTG  BK 14037  PG 01118                              MONTCO

MONTGOMERY COUNTY COMMISSIONERS REGISTRY
36-00-09872-04-6    HORSHAM TOWNSHIP
200 PRECISION RD
HORSHAM PROPERTY ASSOCIATES LP              $15.00
B 012 L  U 072  3340 11/02/2015                 ND

MONTGOMERY COUNTY COMMISSIONERS REGISTRY
36-00-09946-00-8    HORSHAM TOWNSHIP
425 PRIVET RD
HORSHAM PROPERTY ASSOCIATES LP              $15.00
B 012 L  U 062  4330 11/02/2015                 ND

## HORSHAM PROPERTY ASSOCIATES, LP
(Mortgagor)

to

## SILVERPEAK REAL ESTATE FINANCE LLC
(Mortgagee)

### MORTGAGE, ASSIGNMENT OF LEASES AND RENTS
### AND SECURITY AGREEMENT

Dated:  As of October 28, 2015, but made effective October 30, 2015

Property Location:     200 Precision Drive and 425 Privet Road
Horsham, Montgomery County, Pennsylvania

TAX PARCEL NUMBER:    200 Precision: 36-00-09872-04-6
425 Privet: 36-00-09946-00-8

### DOCUMENT PREPARED BY AND WHEN RECORDED, RETURN TO:

Kaye Scholer LLP
250 W. 55th Street
New York, New York 10022-9710
Attention: Stephen Gliatta, Esq.

63056041

### MORTGAGE, ASSIGNMENT OF LEASES AND RENTS AND SECURITY

**AGREEMENT** (this "*Mortgage*"), made October 28, 2015 and effective October 30, 2015, by **HORSHAM PROPERTY ASSOCIATES, LP**, a Pennsylvania limited partnership, having an office at c/o Endurance Real Estate Group, LLC, 1 Bala Avenue, Suite 502, Bala Cynwyd, Pennsylvania 19004 ("*Mortgagor*"), to **SILVERPEAK REAL ESTATE FINANCE LLC** (together with its successors and assigns, hereinafter referred to as "*Mortgagee*"), having an address at 1330 Avenue of the Americas, New York, New York 10019.

Mortgagor and Mortgagee have entered into a Loan Agreement dated as of the date hereof (as amended, modified, restated, consolidated or supplemented from time to time, the "*Loan Agreement*") pursuant to which Mortgagee is making a secured loan to Mortgagor in the aggregate original principal amount of $28,000,000.00 (the "*Loan*"). Capitalized terms used herein without definition are used as defined in the Loan Agreement. The Loan is evidenced by a Note dated the date hereof made by Mortgagor to Mortgagee in such principal amount (as the same may be amended, modified, restated, severed, consolidated, renewed, replaced, or supplemented from time to time, the "*Note*").

To secure the payment of the Note and all sums which may or shall become due thereunder or under any of the other documents evidencing, securing or executed in connection with the Loan (the Note, this Mortgage, the Loan Agreement and such other documents, as any of the same may, from time to time, be modified, amended or supplemented, being hereinafter collectively referred to as the "*Loan Documents*"), including (i) the payment of interest and other amounts which would accrue and become due but for the filing of a petition in bankruptcy (whether or not a claim is allowed against Mortgagor for such interest or other amounts in any such bankruptcy proceeding) or the operation of the automatic stay under Section 362(a) of Title 11 of the United States Code (the "*Bankruptcy Code*"), and (ii) the costs and expenses of enforcing any provision of any Loan Document (all such sums being hereinafter collectively referred to as the "*Debt*"), Mortgagor hereby irrevocably mortgages, grants, bargains, sells, conveys, transfers, pledges, sets over and assigns, and grants a security interest, to and in favor of Mortgagee, **WITH POWER OF SALE**, all of Mortgagor's right, title and interest in and to the land described in <u>Exhibit A</u> (the "*Premises*"), and the buildings, structures, fixtures and other improvements now or hereafter located thereon (the "*Improvements*");

**TOGETHER WITH:** all right, title, interest and estate of Mortgagor now owned, or hereafter acquired, in and to the following property, rights, interests and estates (the Premises, the Improvements, and the property, rights, interests and estates hereinafter described are collectively referred to herein as the "*Mortgaged Property*"):

(a)     all easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, rights to oil, gas, minerals, coal and other substances of any kind or character, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Premises and the Improvements; and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road, highway, alley or avenue, opened, vacated or proposed, in front of or adjoining the Premises, to the center line thereof; and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand

63086641

11/02/2015 02:36:13 PM                    MTG  BK 14037     PG 01120                        MONTCO

whatsoever, both at law and in equity, of Mortgagor of, in and to the Premises and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(b)       all machinery, furniture, furnishings, equipment, computer software and hardware, fixtures (including all heating, air conditioning, plumbing, lighting, communications and elevator fixtures), inventory, materials, supplies and other articles of personal property and accessions thereof, renewals and replacements thereof and substitutions thereof, and other property of every kind and nature, tangible or intangible, owned by Mortgagor, or which Mortgagor has or shall have an interest, now or hereafter located upon the Premises or the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Premises and the Improvements (hereinafter collectively referred to as the *"Equipment"*), including any leases of, deposits in connection with, and proceeds of any sale or transfer of any of the foregoing, and the right, title and interest of Mortgagor in and to any of the Equipment that may be subject to any "security interest" as defined in the Uniform Commercial Code, as in effect in the State where the Mortgaged Property is located (the *"UCC"*), superior in lien to the lien of this Mortgage;

(c)       all awards or payments, including interest thereon, that may heretofore or hereafter be made with respect to the Premises or the Improvements, whether from the exercise of the right of eminent domain or condemnation (including any transfer made in lieu of or in anticipation of the exercise of such right), or for a change of grade, or for any other injury to or decrease in the value of the Premises or Improvements;

(d)       all leases, subleases and other agreements or arrangements heretofore or hereafter entered into affecting the use, enjoyment or occupancy of, or the conduct of any activity upon or in, the Premises or the Improvements, including any extensions, renewals, modifications or amendments thereof (hereinafter collectively referred to as the *"Leases"*) and all rents, rent equivalents, moneys payable as damages (including payments by reason of the rejection of a Lease in a Bankruptcy Proceeding or in lieu of rent or rent equivalents), royalties (including all oil and gas or other mineral royalties and bonuses), income, fees, receivables, receipts, revenues, deposits (including security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other consideration of whatever form or nature received by or paid to or for the account of or benefit of Mortgagor or its agents or employees from any and all sources arising from or attributable to the Premises and the Improvements, including all receivables, customer obligations, installment payment obligations and other obligations now existing or hereafter arising or created out of the sale, lease, sublease, license, concession or other grant of the right of the use and occupancy of the Premises or the Improvements, or rendering of services by Mortgagor or any of its agents or employees, and proceeds, if any, from business interruption or other loss of income insurance (hereinafter collectively referred to as the *"Rents"*), together with all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt;

(e)       all proceeds of and any unearned premiums on any insurance policies covering the Mortgaged Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Mortgaged Property;

(f)    the right, in the name and on behalf of Mortgagor, to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to commence any action or proceeding to protect the interest of Mortgagee in the Mortgaged Property;

(g)    all accounts (including reserve accounts), escrows, documents, instruments, chattel paper, claims, deposits and general intangibles, as the foregoing terms are defined in the UCC, and all franchises, trade names, trademarks, symbols, service marks, books, records, plans, specifications, designs, drawings, surveys, title insurance policies, permits, consents, licenses, management agreements, contract rights (including any contract with any architect or engineer or with any other provider of goods or services for or in connection with any construction, repair or other work upon the Mortgaged Property), approvals, actions, refunds of real estate taxes and assessments (and any other governmental impositions related to the Mortgaged Property) and causes of action that now or hereafter relate to, are derived from or are used in connection with the Mortgaged Property, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon (hereinafter collectively referred to as the "*Intangibles*"); and

(h)    all proceeds, products, offspring, rents and profits from any of the foregoing, including those from sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

Without limiting the generality of any of the foregoing, in the event that a case under the Bankruptcy Code is commenced by or against Mortgagor, pursuant to Section 552(b)(2) of the Bankruptcy Code, the security interest granted by this Mortgage shall automatically extend to all Rents acquired by the Mortgagor after the commencement of the case and shall constitute cash collateral under Section 363(a) of the Bankruptcy Code.

TO HAVE AND TO HOLD the Mortgaged Property unto Mortgagee and its successors and assigns, forever;

PROVIDED, HOWEVER, these presents are upon the express condition that, if Mortgagor shall well and truly pay to Mortgagee the Debt at the time and in the manner provided in the Loan Documents and shall well and truly abide by and comply with each and every covenant and condition set forth in the Loan Documents in a timely manner, these presents and the estate hereby granted shall cease, terminate and be void;

AND Mortgagor represents and warrants to and covenants and agrees with Mortgagee as follows:

## PART I - GENERAL PROVISIONS

1.    Payment of Debt and Incorporation of Covenants, Conditions and Agreements.  Mortgagor shall pay the Debt at the time and in the manner provided in the Loan Documents. All the covenants, conditions and agreements contained in the Loan Documents are hereby made a part of this Mortgage to the same extent and with the same force as if fully set forth herein.  Without limiting the generality of the foregoing, Mortgagor (i) agrees to insure, repair, maintain and restore damage to the Mortgaged Property, pay Taxes and Other Charges, and comply with Legal Requirements, in accordance with the Loan Agreement, and (ii) agrees

that the Proceeds of Insurance and Awards for Condemnation shall be settled, held and applied in accordance with the Loan Agreement.

  2.  <u>Leases and Rents</u>.

    (a)  Mortgagor does hereby absolutely and unconditionally assign to Mortgagee all of Mortgagor's right, title and interest in all current and future Leases and Rents, it being intended by Mortgagor that this assignment constitutes a present, absolute assignment, and not an assignment for additional security only. Such assignment shall not be construed to bind Mortgagee to the performance of any of the covenants or provisions contained in any Lease or otherwise impose any obligation upon Mortgagee. Nevertheless, subject to the terms of this paragraph, Mortgagee grants to Mortgagor a revocable license to operate and manage the Mortgaged Property and to collect the Rents subject to the requirements of the Loan Agreement (including the deposit of Rents into the Clearing Account). Upon an Event of Default, without the need for notice or demand, the license granted to Mortgagor herein shall automatically be revoked, and Mortgagee shall immediately be entitled to possession of all Rents in the Clearing Account, the Deposit Account (including all Subaccounts thereof) and all Rents collected thereafter (including Rents past due and unpaid), whether or not Mortgagee enters upon or takes control of the Mortgaged Property. Mortgagor hereby grants and assigns to Mortgagee the right, at its option, upon revocation of the license granted herein, to enter upon the Mortgaged Property in person, by agent or by court-appointed receiver to collect the Rents. Any Rents collected after the revocation of such license may be applied toward payment of the Debt in such priority and proportions as Mortgagee in its sole discretion shall deem proper.

    (b)  Mortgagor shall not enter into, modify, amend, cancel, terminate or renew any Lease except as provided in <u>Section 5.10</u> of the Loan Agreement.

    3.  <u>Use of Mortgaged Property</u>. Mortgagor shall not initiate, join in, acquiesce in or consent to any change in any private restrictive covenant, zoning law or other public or private restriction, limiting or defining the uses which may be made of the Mortgaged Property. If under applicable zoning provisions the use of the Mortgaged Property is or shall become a nonconforming use, Mortgagor shall not cause or permit such nonconforming use to be discontinued or abandoned without the consent of Mortgagee. Mortgagor shall not (i) change the use of the Mortgaged Property, (ii) permit or suffer to occur any waste on or to the Mortgaged Property or (iii) take any steps to convert the Mortgaged Property to a condominium or cooperative form of ownership.

    4.  <u>Transfer or Encumbrance of the Mortgaged Property</u>.

    (a)  Mortgagor acknowledges that (i) Mortgagee has examined and relied on the creditworthiness and experience of the principals of Mortgagor in owning and operating properties such as the Mortgaged Property in agreeing to make the Loan, (ii) Mortgagee will continue to rely on Mortgagor's ownership of the Mortgaged Property as a means of maintaining the value of the Mortgaged Property as security for the Debt, and (iii) Mortgagee has a valid interest in maintaining the value of the Mortgaged Property so as to ensure that, should Mortgagor default in the repayment of the Debt, Mortgagee can recover the Debt by a sale of the Mortgaged Property. Mortgagor shall not sell, convey, alienate, mortgage, encumber, pledge or

otherwise transfer the Mortgaged Property or any part thereof, or suffer or permit any Transfer to occur, other than a Permitted Transfer.

(b)     Mortgagee shall not be required to demonstrate any actual impairment of its security or any increased risk of default hereunder in order to declare the Debt immediately due and payable upon Transfer in violation of this Paragraph 4. This provision shall apply to every sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property (and every other Transfer) regardless of whether voluntary or not. Any Transfer made in contravention of this Paragraph 4 shall be null and void and of no force and effect. Mortgagor agrees to bear and shall pay or reimburse Mortgagee on demand for all reasonable expenses (including reasonable attorneys' fees and disbursements, title search costs and title insurance endorsement premiums) incurred by Mortgagee in connection with the review, approval and documentation of any Permitted Transfer.

5.     Changes in Laws Regarding Taxation. If any law is enacted or adopted or amended after the date of this Mortgage which deducts the Debt from the value of the Mortgaged Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Mortgagee's interest in the Mortgaged Property, Mortgagor will pay such tax, with interest and penalties thereon, if any. If Mortgagee is advised by its counsel that the payment of such tax or interest and penalties by Mortgagor would be unlawful, taxable to Mortgagee or unenforceable, or would provide the basis for a defense of usury, then Mortgagee shall have the option, by notice of not less than 90 days, to declare the Debt immediately due and payable.

6.     No Credits on Account of the Debt. Mortgagor shall not claim or demand or be entitled to any credit on account of the Debt for any part of the Taxes or Other Charges assessed against the Mortgaged Property, and no deduction shall otherwise be made or claimed from the assessed value of the Mortgaged Property for real estate tax purposes by reason of this Mortgage or the Debt. If such claim, credit or deduction shall be required by law, Mortgagee shall have the option, by notice of not less than 90 days, to declare the Debt immediately due and payable.

7.     Further Acts, Etc. Mortgagor shall, at its sole cost, perform, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignment, transfers and assurances as Mortgagee shall, from time to time, require, for the better assuring, conveying, assigning, transferring, and confirming unto Mortgagee the property and rights hereby mortgaged, given, granted, bargained, sold, alienated, enfeoffed, conveyed, confirmed, pledged, assigned and hypothecated or intended now or hereafter so to be, or which Mortgagor may be or may hereafter become bound to convey or assign to Mortgagee, or for carrying out the intention or facilitating the performance of the terms of this Mortgage, or for filing, registering or recording this Mortgage or for facilitating the sale and transfer of the Loan (or any portion thereof) and the Loan Documents in connection with a "Secondary Market Transaction" as described in Section 9.1 of the Loan Agreement. Upon foreclosure, the appointment of a receiver or any other relevant action, Mortgagor shall, at its sole cost, cooperate fully and completely to effect the assignment or transfer of any license, permit, agreement or any other right necessary or useful to the operation of the Mortgaged Property. Mortgagor grants to Mortgagee an irrevocable power of attorney coupled with an

interest for the purpose of exercising and perfecting any and all rights and remedies available to Mortgagee at law and in equity, including such rights and remedies available to Mortgagee pursuant to this paragraph. Notwithstanding anything to the contrary in the immediately preceding sentence, Mortgagee shall not execute any document as attorney-in-fact of Mortgagor unless (x) Mortgagor shall have failed or refused to execute the same within seven (7) Business Days after Mortgagee's request therefor, or (y) in Mortgagee's good faith determination it would be materially prejudiced by the delay involved in making such a request. Mortgagee shall give prompt notice to Mortgagor of any exercise of the power of attorney as provided for in this Paragraph 7, along with copies of all documents executed in connection therewith.

8.      **Recording of Mortgage, Etc.**  Mortgagor forthwith upon the execution and delivery of this Mortgage and thereafter, from time to time, shall cause this Mortgage, and any security instrument creating a lien or security interest or evidencing the lien hereof upon the Mortgaged Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect the lien or security interest hereof upon, and the interest of Mortgagee in, the Mortgaged Property. Mortgagor shall pay all filing, registration or recording fees, all expenses incident to the preparation, execution and acknowledgment of and all federal, state, county and municipal, taxes, duties, imposts, documentary stamps, assessments and charges arising out of or in connection with the execution and delivery of, this Mortgage, any Mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property or any instrument of further assurance, except where prohibited by law so to do. Mortgagor shall hold harmless and indemnify Mortgagee, its successors and assigns, against any liability incurred by reason of the imposition of any tax on the making or recording of this Mortgage.

9.      **Right to Cure Defaults.**  Upon the occurrence of any Event of Default, Mortgagee may, but without any obligation to do so and without notice to or demand on Mortgagor and without releasing Mortgagor from any obligation hereunder, perform the obligations in Default in such manner and to such extent as Mortgagee may deem necessary to protect the security hereof. Mortgagee is authorized to enter upon the Mortgaged Property for such purposes or appear in, defend or bring any action or proceeding to protect its interest in the Mortgaged Property or to foreclose this Mortgage or collect the Debt, and the cost and expense thereof (including reasonable attorneys' fees and disbursements to the extent permitted by law), with interest thereon at the Default Rate for the period after notice from Mortgagee that such cost or expense was incurred to the date of payment to Mortgagee, shall constitute a portion of the Debt, shall be secured by this Mortgage and the other Loan Documents and shall be due and payable to Mortgagee upon demand.

10.     **Remedies.**

(a)      Upon the occurrence of any Event of Default, Mortgagee may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Mortgagor and in and to the Mortgaged Property, by Mortgagee itself or otherwise, including the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Mortgagee may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Mortgagee:

(i)      declare the entire Debt to be immediately due and payable;

(ii)     institute a proceeding or proceedings, judicial or nonjudicial, to the extent permitted by law, by advertisement or otherwise, for the complete foreclosure of this Mortgage, in which case the Mortgaged Property may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner;

(iii)    with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Mortgage for the portion of the Debt then due and payable, subject to the continuing lien of this Mortgage for the balance of the Debt not then due;

(iv)    sell for cash or upon credit the Mortgaged Property and all estate, claim, demand, right, title and interest of Mortgagor therein and rights of redemption thereof, pursuant to the power of sale, to the extent permitted by law, or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law;

(v)     institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein or in any other Loan Document;

(vi)    recover judgment on the Note either before, during or after any proceeding for the enforcement of this Mortgage;

(vii)    apply for the appointment of a trustee, receiver, liquidator or conservator of the Mortgaged Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of the Mortgagor or of any person, firm or other entity liable for the payment of the Debt;

(viii)   enforce Mortgagee's interest in the Leases and Rents and enter into or upon the Mortgaged Property, either personally or by its agents, nominees or attorneys and dispossess Mortgagor and its agents and employees therefrom, and thereupon Mortgagee may (A) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with the Mortgaged Property and conduct the business thereat; (B) complete any construction on the Mortgaged Property in such manner and form as Mortgagee deems advisable; (C) make alterations, additions, renewals, replacements and improvements to or on the Mortgaged Property; (D) exercise all rights and powers of Mortgagor with respect to the Mortgaged Property, whether in the name of Mortgagor or otherwise, including the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive Rents; and (E) apply the receipts from the Mortgaged Property to the payment of the Debt, after deducting therefrom all expenses (including reasonable attorneys' fees and disbursements) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes, insurance and other charges in connection with the Mortgaged Property, as well as just and reasonable compensation for the services of Mortgagee, and its counsel, agents and employees;

(ix)     require Mortgagor to pay monthly in advance to Mortgagee, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of any portion of the Mortgaged Property occupied by Mortgagor, and require Mortgagor to vacate and surrender possession of the Mortgaged Property to Mortgagee or to such receiver, and, in default thereof, evict Mortgagor by summary proceedings or otherwise; or

(x)     pursue such other rights and remedies as may be available at law or in equity or under the UCC, including the right to receive and/or establish a lock box for all Rents and proceeds from the Intangibles and any other receivables or rights to payments of Mortgagor relating to the Mortgaged Property.

In the event of a sale, by foreclosure or otherwise, of less than all of the Mortgaged Property, this Mortgage shall continue as a lien on the remaining portion of the Mortgaged Property.

(b)     The proceeds of any sale made under or by virtue of this Paragraph 10, together with any other sums which then may be held by Mortgagee under this Mortgage, whether under the provisions of this paragraph or otherwise, shall be applied by Mortgagee to the payment of the Debt in such priority and proportion as Mortgagee in its sole discretion shall deem proper.

(c)     Mortgagee may adjourn from time to time any sale by it to be made under or by virtue of this Mortgage by announcement at the time and place appointed for such sale or for such adjourned sale or sales; and, except as otherwise provided by any applicable law, Mortgagee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

(d)     Upon the completion of any sale or sales pursuant hereto, Mortgagee, or an officer of any court empowered to do so, shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument, or good and sufficient instruments, conveying, assigning and transferring all estate, right, title and interest in and to the property and rights sold. Mortgagee is hereby irrevocably appointed the true and lawful attorney of Mortgagor, in its name and stead, to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose Mortgagee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, Mortgagor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any sale or sales made under or by virtue of this Paragraph 10, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Mortgagor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Mortgagor and against any and all persons claiming or who may claim the same, or any part thereof, from, through or under Mortgagor.

(e)     Upon any sale made under or by virtue of this Paragraph 10, whether made under a power of sale or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Mortgagee may bid for and acquire the Mortgaged Property or

any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the Debt the net sales price after deducting therefrom the expenses of the sale and costs of the action and any other sums which Mortgagee is authorized to deduct under this Mortgage or any other Loan Document.

(f)     No recovery of any judgment by Mortgagee and no levy of an execution under any judgment upon the Mortgaged Property or upon any other property of Mortgagor shall affect in any manner or to any extent the lien of this Mortgage upon the Mortgaged Property or any part thereof, or any liens, rights, powers or remedies of Mortgagee hereunder, but such liens, rights, powers and remedies of Mortgagee shall continue unimpaired as before.

(g)     Mortgagee may terminate or rescind any proceeding or other action brought in connection with its exercise of the remedies provided in this Paragraph 10 at any time before the conclusion thereof, as determined in Mortgagee's sole discretion and without prejudice to Mortgagee.

(h)     Mortgagee may resort to any remedies and the security given by this Mortgage or in any other Loan Document in whole or in part, and in such portions and in such order as determined by Mortgagee's sole discretion.  No such action shall in any way be considered a waiver of any rights, benefits or remedies evidenced or provided by any Loan Document.  The failure of Mortgagee to exercise any right, remedy or option provided in any Loan Document shall not be deemed a waiver of such right, remedy or option or of any covenant or obligation secured by any Loan Document.  No acceptance by Mortgagee of any payment after the occurrence of any Event of Default and no payment by Mortgagee of any obligation for which Mortgagor is liable hereunder shall be deemed to waive or cure any Event of Default, or Mortgagor's liability to pay such obligation.  No sale of all or any portion of the Mortgaged Property, no forbearance on the part of Mortgagee, and no extension of time for the payment of the whole or any portion of the Debt or any other indulgence given by Mortgagee to Mortgagor, shall operate to release or in any manner affect the interest of Mortgagee in the remaining Mortgaged Property or the liability of Mortgagor to pay the Debt.  No waiver by Mortgagee shall be effective unless it is in writing and then only to the extent specifically stated.  All costs and expenses of Mortgagee in exercising its rights and remedies under this Paragraph 10 (including reasonable attorneys' fees and disbursements to the extent permitted by law), shall be paid by Mortgagor immediately upon notice from Mortgagee, with interest at the Default Rate for the period after notice from Mortgagee, and such costs and expenses shall constitute a portion of the Debt and shall be secured by this Mortgage.

(i)     The interests and rights of Mortgagee under the Loan Documents shall not be impaired by any indulgence, including (x) any renewal, extension or modification which Mortgagee may grant with respect to any of the Debt, (y) any surrender, compromise, release, renewal, extension, exchange or substitution which Mortgagee may grant with respect to the Mortgaged Property or any portion thereof or (z) any release or indulgence granted to any maker, endorser, guarantor or surety of any of the Debt.

11.     **Right of Entry.**  In addition to any other rights or remedies granted under this Mortgage, Mortgagee and its agents shall have the right to enter and inspect the Mortgaged Property at any reasonable time during the term of this Mortgage.  The cost of such inspections

or audits shall be borne by Mortgagor should Mortgagee determine that an Event of Default exists, including the cost of all follow up or additional investigations or inquiries deemed reasonably necessary by Mortgagee. The cost of such inspections, if not paid for by Mortgagor following demand, may be added to the principal balance of the sums due under the Note and this Mortgage and shall bear interest thereafter until paid at the Default Rate.

      12.   **Security Agreement.** This Mortgage is both a real property mortgage and a "security agreement" within the meaning of the UCC. The Mortgaged Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Mortgagor in the Mortgaged Property. Mortgagor by executing and delivering this Mortgage has granted and hereby grants to Mortgagee, as security for the Debt, a security interest in the Mortgaged Property to the full extent that the Mortgaged Property may be subject to the UCC (such portion of the Mortgaged Property so subject to the UCC being called in this paragraph the "*Collateral*"). The foregoing sentence is intended to grant in favor of Mortgagee a first priority continuing lien and security interest in the Mortgaged Property. Mortgagor authorizes Mortgagee and its counsel to file UCC financing statements in form and substance satisfactory to Mortgagee, describing the collateral as "all Equipment, Leases, Rents and Intangibles of Mortgagor, whether now owned or existing or hereafter acquired or arising and wheresoever located, and all proceeds and products thereof, including, without limitation, all fixtures on the Premises" or words to that effect, and any limitations on such collateral description. This Mortgage shall also constitute a "fixture filing" for the purposes of the UCC. As such, this Mortgage covers all items of the Collateral that are or are to become fixtures. Information concerning the security interest herein granted may be obtained from the parties at the addresses of the parties set forth in the first paragraph of this Mortgage. If an Event of Default shall occur, Mortgagee, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the UCC, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Mortgagee may deem necessary for the care, protection and preservation of the Collateral. Upon request or demand of Mortgagee, Mortgagor shall at its expense assemble the Collateral and make it available to Mortgagee at a convenient place acceptable to Mortgagee. Mortgagor shall pay to Mortgagee on demand any and all expenses, including reasonable attorneys' fees and disbursements, incurred or paid by Mortgagee in protecting the interest in the Collateral and in enforcing the rights hereunder with respect to the Collateral. Any notice of sale, disposition or other intended action by Mortgagee with respect to the Collateral, sent to Mortgagor in accordance with the provisions hereof at least ten days prior to such action, shall constitute commercially reasonable notice to Mortgagor. The proceeds of any disposition of the Collateral, or any part thereof, may be applied by Mortgagee to the payment of the Debt in such priority and proportions as Mortgagee in its sole discretion shall deem proper. In the event of any change in name, identity or structure of Mortgagor, Mortgagor shall notify Mortgagee thereof and promptly after request shall execute, file and record such UCC forms as are necessary to maintain the priority of Mortgagee's lien upon and security interest in the Collateral, and shall pay all expenses and fees in connection with the filing and recording thereof. If Mortgagee shall require the filing or recording of additional UCC forms or continuation statements, Mortgagor shall, promptly after request, execute, file and record such UCC forms or continuation statements as Mortgagee shall deem necessary, and shall pay all expenses and fees in connection with the filing and recording thereof, it being understood and

agreed, however, that no such additional documents shall increase Mortgagor's obligations under the Loan Documents.

13.    **Actions and Proceedings.**  Mortgagee has the right to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to bring any action or proceeding, in the name and on behalf of Mortgagor, which Mortgagee, in its sole discretion, decides should be brought to protect its or their interest in the Mortgaged Property. Mortgagee shall, at its option, be subrogated to the lien of any mortgage or other security instrument discharged in whole or in part by the Debt, and any such subrogation rights shall constitute additional security for the payment of the Debt.

14.    **Marshalling and Other Matters.**  Mortgagor hereby waives, to the extent permitted by law, the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Mortgaged Property or any part thereof or any interest therein.  Further, Mortgagor hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of this Mortgage on behalf of Mortgagor, and on behalf of each and every person acquiring any interest in or title to the Mortgaged Property subsequent to the date of this Mortgage and on behalf of all persons to the extent permitted by applicable law. The lien of this Mortgage shall be absolute and unconditional and shall not in any manner be affected or impaired by any acts or omissions whatsoever of Mortgagee and, without limiting the generality of the foregoing, the lien hereof shall not be impaired by (i) any acceptance by Mortgagee of any other security for any portion of the Debt, (ii) any failure, neglect or omission on the part of Mortgagee to realize upon or protect any portion of the Debt or any collateral security therefor or (iii) any release (except as to the property released), sale, pledge, surrender, compromise, settlement, renewal, extension, indulgence, alteration, changing, modification or disposition of any portion of the Debt or of any of the collateral security therefor; and Mortgagee may foreclose, or exercise any other remedy available to Mortgagee under other Loan Documents without first exercising or enforcing any of its remedies under this Mortgage, and any exercise of the rights and remedies of Mortgagee hereunder shall not in any manner impair the Debt or the liens of any other Loan Document or any of Mortgagee's rights and remedies thereunder.

15.    **Notices.**  All notices, consents, approvals and requests required or permitted hereunder shall be in writing, and shall be sent, and shall be deemed effective, as provided in the Loan Agreement.

16.    **Inapplicable Provisions.**  If any term, covenant or condition of this Mortgage is held to be invalid, illegal or unenforceable in any respect, this Mortgage shall be construed without such provision.

17.    **Headings.**  The paragraph headings in this Mortgage are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

18.    **Duplicate Originals.**  This Mortgage may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original.

63056641                                    11

19.   __Definitions.__   Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Mortgage may be used interchangeably in singular or plural form; and the word *"Mortgagor"* shall mean "each Mortgagor and any subsequent owner or owners of the Mortgaged Property or any part thereof or any interest therein," the word *"Mortgagee"* shall mean "Mortgagee and any subsequent holder of the Note," the words *"Mortgaged Property"* shall include any portion of the Mortgaged Property and any interest therein, the word *"including"* means "including but not limited to" and the words *"attorneys' fees"* shall include any and all reasonable attorneys' fees, paralegal and law clerk fees, including fees at the pre-trial, trial and appellate levels incurred or paid by Mortgagee in protecting its interest in the Mortgaged Property and Collateral and enforcing its rights hereunder.

20.   __Homestead.__   Mortgagor hereby waives and renounces all homestead and exemption rights provided by the Constitution and the laws of the United States and of any state, in and to the Mortgaged Property as against the collection of the Debt, or any part thereof.

21.   __Assignments.__   Mortgagee shall have the right to assign or transfer its rights under this Mortgage without limitation. Any assignee or transferee shall be entitled to all the benefits afforded Mortgagee under this Mortgage.

22.   __Waiver of Jury Trial.__   MORTGAGOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS MORTGAGE OR ANY OTHER LOAN DOCUMENT, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH.   THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY MORTGAGOR, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.   MORTGAGEE·IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY MORTGAGOR.

23.   __Consents.__   Any consent or approval by Mortgagee in any single instance shall not be deemed or construed to be Mortgagee's consent or approval in any like matter arising at a subsequent date, and the failure of Mortgagee to promptly exercise any right, power, remedy, consent or approval provided herein or at law or in equity shall not constitute or be construed as a waiver of the same nor shall Mortgagee be estopped from exercising such right, power, remedy, consent or approval at a later date. Any consent or approval requested of and granted by Mortgagee pursuant hereto shall be narrowly construed to be applicable only to Mortgagor and the matter identified in such consent or approval and no third party shall claim any benefit by reason thereof, and any such consent or approval shall not be deemed to constitute Mortgagee a venturer or partner with Mortgagor nor shall privity of contract be presumed to have been established with any such third party. If Mortgagee deems it to be in its best interest to retain assistance of persons, firms or corporations (including attorneys, title insurance companies, appraisers, engineers and surveyors) with respect to a request for consent or

63056641                                      12

approval, Mortgagor shall reimburse Mortgagee for all costs reasonably incurred in connection with the employment of such persons, firms or corporations.

24.     Loan Repayment and Defeasance.  Provided no Event of Default exists, this Mortgage will be satisfied and discharged of record by Mortgagee prior to the Maturity Date only in accordance with the terms and provisions set forth in the Loan Agreement.

25.     Intentionally Omitted.

26.     Governing Law.  WITH RESPECT TO MATTERS RELATING TO THE CREATION, PERFECTION AND PROCEDURES RELATING TO THE RECORDING AND ENFORCEMENT OF THIS MORTGAGE, THIS MORTGAGE SHALL BE GOVERNED BY, AND BE CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE IN WHICH THE MORTGAGED PROPERTY IS LOCATED, IT BEING UNDERSTOOD THAT, EXCEPT AS EXPRESSLY SET FORTH ABOVE IN THIS PARAGRAPH AND TO THE FULLEST EXTENT PERMITTED BY THE LAW OF SUCH STATE, THE LAW OF THE STATE OF NEW YORK WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES SHALL GOVERN ALL MATTERS RELATING TO THIS MORTGAGE AND THE OTHER LOAN DOCUMENTS AND ALL OF THE INDEBTEDNESS OR OBLIGATIONS ARISING HEREUNDER OR THEREUNDER. ALL PROVISIONS OF THE LOAN AGREEMENT INCORPORATED HEREIN BY REFERENCE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES, AS SET FORTH IN THE GOVERNING LAW PROVISION OF THE LOAN AGREEMENT.

27.     Exculpation.  The liability of Mortgagor hereunder is limited pursuant to Section 10.1 of the Loan Agreement.

## PART II

### STATE-SPECIFIC PROVISIONS

28.     Conflicts With Part I.  In the event of any conflict between the provisions of this Part II and any provision of Part I, then the provisions of this Part II shall control.

29.     Pennsylvania.  This Pennsylvania Specific Rider (this "Pennsylvania Rider"), is attached to and forms a part of this Mortgage. Any capitalized term used in this Pennsylvania Rider shall have the meaning given to such term in the Mortgage, unless otherwise expressly defined in this Pennsylvania Rider.  Notwithstanding anything contained in the Mortgage, in the event of a conflict between the provisions of this Pennsylvania Rider and any other part of the Mortgage, the terms and provisions of this Pennsylvania Rider shall modify and supersede and shall govern and control over such other conflicting portion of the Mortgage. This Pennsylvania Rider shall be effective only with respect to the Property located in the Commonwealth of Pennsylvania.

(a)   Protective Advances.   Pursuant to 42 Pa. C.S.A. §8144, this Mortgage secures the unpaid balance of advances made, with respect to the Property, for the payment of taxes, assessments, maintenance charges, insurance premiums or costs incurred by Lender for the protection of the Property or the lien of this Mortgage, and expenses incurred by Lender by reason of an Event of Default, and the priority of the lien of such advances shall relate back to the date of recording of this Mortgage.

(b)   Release of Mortgage.   This instrument is granted upon express condition that if Borrower punctually pays and performs all of the Obligations in accordance with the terms of the Loan Documents and the terms hereof, then this Mortgage and the estate granted hereby shall cease and become void, except for those provisions hereof which by their terms survive, and the Property shall become wholly clear of the liens, security interests, conveyances and assignments evidenced hereby, which shall be released by Lender in due form at Borrower's cost. No release of this Mortgage or the lien hereof shall be valid unless executed by Lender.

(c)   Confession of Judgment.   FOR THE PURPOSE OF OBTAINING POSSESSION OF THE PROPERTY UPON THE OCCURRENCE OF AN EVENT OF DEFAULT HEREUNDER, BORROWER HEREBY AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD IN THE COMMONWEALTH OF PENNSYLVANIA OR ELSEWHERE, AS ATTORNEY FOR BORROWER AND ALL PERSONS CLAIMING UNDER OR THROUGH BORROWER TO SIGN AN AGREEMENT FOR ENTERING IN ANY COMPETENT COURT AN ACTION IN EJECTMENT FOR POSSESSION OF THE PROPERTY AND TO APPEAR FOR AND CONFESS JUDGMENT AGAINST BORROWER AND AGAINST ALL PERSONS CLAIMING UNDER OR THROUGH BORROWER, IN FAVOR OF LENDER, FOR RECOVERY BY LENDER OF POSSESSION THEREOF, FOR WHICH THIS MORTGAGE, OR A COPY THEREOF VERIFIED BY AFFIDAVIT, SHALL BE A SUFFICIENT WARRANT; AND THEREUPON A WRIT OF POSSESSION MAY IMMEDIATELY ISSUE FOR POSSESSION OF THE PROPERTY, WITHOUT ANY PRIOR WRIT OR PROCEEDING WHATSOEVER AND WITHOUT ANY STAY OF EXECUTION. IF FOR ANY REASON AFTER SUCH ACTION HAS BEEN COMMENCED IT SHOULD BE DISCONTINUED, OR POSSESSION OF THE PROPERTY SHALL REMAIN IN OR BE RESTORED TO BORROWER, LENDER SHALL HAVE THE RIGHT FOR THE SAME EVENT OF DEFAULT OR ANY SUBSEQUENT EVENT OF DEFAULT TO BRING ONE OR MORE FURTHER ACTIONS AS ABOVE PROVIDED TO RECOVER POSSESSION OF THE PROPERTY. LENDER MAY BRING AN ACTION IN EJECTMENT AND CONFESS JUDGMENT THEREIN BEFORE OR AFTER THE INSTITUTION OF PROCEEDINGS TO FORECLOSE THIS MORTGAGE OR TO ENFORCE THE NOTE, OR AFTER ENTRY OF JUDGMENT THEREIN OR ON THE NOTE, OR AFTER A SHERIFF'S SALE OF THE PROPERTY IN WHICH LENDER IS THE SUCCESSFUL BIDDER; THE AUTHORIZATION TO PURSUE SUCH PROCEEDINGS FOR OBTAINING POSSESSION AND CONFESS JUDGMENT THEREIN IS AN ESSENTIAL PART OF THE REMEDIES FOR ENFORCEMENT OF THIS MORTGAGE AND THE NOTE, AND SHALL SURVIVE ANY EXECUTION SALE TO LENDER

BORROWER CONFIRMS TO LENDER THAT (I) BORROWER IS A BUSINESS ENTITY AND THAT ITS PRINCIPALS ARE KNOWLEDGEABLE IN BUSINESS MATTERS; (II) THE TERMS OF THIS MORTGAGE, INCLUDING THE FOREGOING

63056641

14

WARRANT OF ATTORNEY TO CONFESS JUDGMENT, HAVE BEEN NEGOTIATED AND AGREED UPON IN A COMMERCIAL CONTEXT; AND (III) IT HAS FULLY REVIEWED THE AFORESAID WARRANT OF ATTORNEY TO CONFESS JUDGMENT WITH ITS OWN COUNSEL AND IS KNOWINGLY AND VOLUNTARILY WAIVING CERTAIN RIGHTS IT WOULD OTHERWISE POSSESS, INCLUDING BUT NOT LIMITED TO, THE RIGHT TO ANY NOTICE OR A HEARING PRIOR TO THE ENTRY OF JUDGMENT BY LENDER PURSUANT TO THE AFORESAID WARRANT OF ATTORNEY

30. **Future Advances.**

(i) This Mortgage is an "OPEN-END MORTGAGE" as set forth in 42 Pa.Con.Stat.Ann. § 8143, and this Mortgage is given to secure the Mortgagor's obligations under, or in respect of, the Loan Agreement and all other Loan Documents, up to that amount which is equal to the amount of the aggregate maximum principal indebtedness of all Mortgagor provided under the terms of the Loan Agreement; and this Mortgage shall secure not only all presently existing Debt under the foregoing documents and agreements, but also any and all FUTURE ADVANCES to the Mortgagor and other Debt of the Mortgagor (including, without limitation, all indebtedness) which may be owing or hereafter owed by the Mortgagor to the Mortgagee, however incurred, whether interest, discount or otherwise, and whether the same shall be deferred, accrued or capitalized, including future advances and re-advances pursuant to the Loan Agreement or other Loan Documents, advances for the payment of taxes, assessments, municipal claims, maintenance charges, insurance premiums, costs incurred for the protection of the Mortgaged Property or of the lien of this Mortgage, expenses incurred by the Mortgagee by reason of any default by the Mortgagor under this Mortgage, or for any other permissible purpose, whether such advances are obligatory or to be made at the option of the Mortgagee, or otherwise, of total indebtedness, as defined in 42 Pa. Cons. Stat. Ann. § 8143, of up to $6,330,000.00, to the same extent as if such future advances were made on the date of the execution of this Mortgage. The lien of this Mortgage shall be valid as to all indebtedness secured hereby, including FUTURE ADVANCES, from the time of its filing for record in the recorder's office of the county in which the Property is located; and the lien of all present and future advances shall relate back to the date of this Mortgage. This Mortgage is intended to and shall be valid and have priority over all subsequent liens and encumbrances, including statutory liens, excepting solely taxes and assessments levied on the real estate, to the extent of the maximum amount secured hereby, and Permitted Encumbrances.

(ii) All notices to be given to the Mortgagee pursuant to 42 Pa.Con.Stat.Ann. § 8143 shall be given as set forth in Section 15 above, it being understood that the address of the Mortgagee appearing on the first page of the Mortgage shall be adequate of the purpose of such notices as of the date of this Mortgage.

(iii) NOTWITHSTANDING THE FOREGOING, THE MORTGAGOR HEREBY WAIVES AND RELINQUISHES ALL RIGHTS WHICH IT MAY HAVE TO: (i) FILE, SEND, OR OTHERWISE CREATE OR AUTHORIZE ANY NOTICE PURSUANT TO 42 PA. CON. STAT. ANN. §§ 8143 (b) AND (c), OR (ii) CLAIM THE BENEFITS OF ANY SUCH NOTICE.

11/02/2015 02:36:13 PM          MTG  BK 14037      PG 01134                    MONTCO

IN WITNESS WHEREOF, Mortgagor has executed this instrument as of the day and year first above written.

MORTGAGOR:

HORSHAM PROPERTY ASSOCIATES, LP

By:   Horsham Property General Partner, Inc.
      Its sole general partner

ATTEST:

By: _____        By: _____
    Name:  William A. White             Name:  Benjamin I. Cohen
    Title:  Secretary                    Title:  President

## ACKNOWLEDGMENT

Commonwealth of
~~STATE OF~~ Pennsylvania
                                    :SS
COUNTY OF Montgomery

On this 28th day of October , 2015, before me, Kristie T. Radcliffe , a Notary Public, personally appeared Benjamin I. Cohen as President of Horsham Property General Partner, Inc., the sole general partner of Horsham Property Associates, LP, a Pennsylvania limited partnership, who I am satisfied is the person who executed the foregoing instrument; and he acknowledged that he executed the foregoing instrument as such President of Horsham Property General Partner, Inc. as the sole general partner of Horsham Property Associates, LP, a Pennsylvania limited partnership, as the act of the corporation, in turn acting for and on behalf of the limited partnership as the act of the limited partnership, and that he was authorized to execute the foregoing instrument in the aforesaid capacity on behalf of the corporation, acting for and on behalf of the limited partnership.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_____
Notary Public

Commission expires: Feb. 26, 2016

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Kristie T. Radcliffe, Notary
Springfield Twp., Delawa
My Commission Expires F
MEMBER, PENNSYLVANIA ASSO

[signatures continue on following page]

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Kristie T. Radcliffe, Notary Public
Springfield Twp., Delaware County
My Commission Expires Feb. 26, 2016
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

63056641

SILVERPEAK REAL ESTATE FINANCE LLC, the Mortgagee named, hereby certifies that it has a place of business at 1330 Avenue of the Americas, New York, New York 10019.

MORTGAGEE:
SILVERPEAK REAL ESTATE FINANCE LLC

By: _____

Name: Peter Tzelios
Title:   Chief Operating Officer

63056641

## EXHIBIT A

### Legal Description

ALL THAT CERTAIN tract of ground, Hereditaments and Appurtances, Situate in Horsham Township, Montgomery County, Pennsylvania at 200 Precision Road (Tax Map Block 12, Unit 72) being shown on a plan entitled "ALTA/ASCM Land Title Survey Plan — 200 Precision Road" prepared for Liberty Property Limited Partnership by Fore Site Land Services, Inc., dated April 24, 2000 and being more particularly described as follows:

BEGINNING at a point, a concrete monument, on the Northwesterly side of Precision Road (60 feet wide) a corner of lands of Innkeepers USA LP (Tax Map Block 12, Unit 66); thence from said point of beginning along the Northwesterly side of Precision Road South 40 degrees 15 minutes 0 seconds West 876.35 feet, crossing a portion of the head of a 20 feet wide drainage easement and also crossing the head of another 20 feet wide drainage easement and extending partly along the Southeasterly side of another 20 feet wide drainage easement to an iron pipe, a point of curve, on the Northeasterly side of a cul-de-sac at the terminus of Precision Road; thence extending Southwestwardly and Northwestwardly along the Northeasterly side of the cul-de-sac at the terminus of Precision road on the arc of a circle curving to the right having a radius of 30 feet, an arc distance of 26.62 feet, through a central angle of 50 degrees 50 minutes 0 seconds to an iron pipe, a point of reverse curve; thence extending Northwestwardly and Southwestwardly along the portion of the head of a 20 feet wide drainage and utility easement, on the arc of a circle curving to the left having a radius of 65 feet, an arc distance of 57.67 feet, through a central angle of 50 degrees 50 minutes 0 seconds to a point in line with lands of Precision Drive Acquisition Corp Retired persons Serv, Inc. (Tax Map Block 12, Unit 71; thence extending along said lands of Precision Drive Acquisition Corp, Retired Persons Serv, Inc. North 49 degrees 45 minutes 0 seconds West 425 feet through a 20 feet wide drainage and utility easement, to an iron pipe in line with the lands of U.S. Can Co. (Tax Map Block 12, Unit 61); thence extending partly along said lands of U.S. Can Co. and partly along lands of Bowe 3 Partners (Tax Map Block 12, Unit 62) North 40 degrees 15 minutes 0 seconds East 950 feet, through a 20 feet wide drainage and utility easement to a concrete monument in line with lands of Innkeepers USA LP (Tax Map Block 12, Unit 66); thence extending along said lands of Innkeepers USA LP South 49 degrees 45 minutes 0 seconds East 460 feet, through a 20 feet wide drainage easement to a concrete monument, the point and place of beginning.

BEING known as 200 Precision Road.

BEING Tax Parcel No.: 36-00-09872-04-6.

63056641

ALL THAT CERTAIN tract or piece of land with the buildings and improvements thereon erected, hereditaments and appurtances, situate in the Township of Horsham, County of Montgomery and Commonwealth of Pennsylvania, as shown on "as Built Survey" prepared for Prosser Industries, Inc., dated October 24, 1985, as prepared by C. Raymond Weir Associates, Inc., Civil Engineers and Surveyors, Ambler, Pennsylvania, bounded and described as follows:

BEGINNING at a point, on the Southeasterly right-of-way line of Privet Road, 46.5 feet wide, that is to say 16.5 feet to the Northwest and 30 feet to the Southeast at the centerline of the original 33 foot road; said point of beginning is also a corner of this and land of a MIGS, a unit of general signal, said point of beginning is located South 50 degrees, 20 minutes East 30 feet from a point on the centerline of Privet Road, aforesaid, which last said point is located South 40 degrees 30 minutes West 536.95 feet from the intersection of the centerline of Privet Road with the centerline of Horsham Road, 50 feet wide to the Northwest and 62 feet to the Southeast, that is to say in the Southeasterly portion 25 feet to the Northeast and 37 feet to the Southwest of the centerline of the 50 foot road; thence from the point of beginning, along a MIGS Unit of general signal, and along the Northeasterly right-of-way line of a 20 foot wide drainage easement, South 50 degrees 20 minutes East 814.10 feet to a stone monument found; a corner of this and Bridgeport Textron; thence along the same and along the centerline of a 20 foot wide drainage and utility easement, South 40 degrees 15 minutes West 700 feet to a stone monument found, a corner of this and land of Pennsylvania Can Company; thence along the same and along the Southwesterly right-of-way of a 20 foot wide drainage easement, and traversing a 2 foot wide storm drainage ditch with riprap that encroaches outside of the easement, North 50 degrees 20 minutes West 817.15 feet to a stone monument found on the aforementioned Southeasterly right-of-way line of Privet Road 46.5 feet wide, thence along the same, North 40 degrees 30 minutes east 700.04 feet to a stone monument found at the point and place of beginning.

BEING known as 425 Privet Road.

BEING Tax Parcel No.: 36-00-09946-00-8.

63056641

# EXHIBIT D

## OMNIBUS ASSIGNMENT

**THIS OMNIBUS ASSIGNMENT** (this "**Assignment**"), made as of the 4th day of November, 2015, by **SILVERPEAK REAL ESTATE FINANCE LLC**, a Delaware limited liability company, having an office at 1330 Avenue of the Americas, New York, New York 10019 ("**Assignor**"), to **SPREF WH III LLC**, a Delaware limited liability company, having an address at c/o Silverpeak Real Estate Finance LLC, 1330 Avenue of the Americas, New York, New York 10019 ("**Assignee**").

KNOW ALL MEN BY THESE PRESENTS, that in consideration of the sum of TEN DOLLARS ($10.00) lawful money of the United States and other good and valuable consideration, to it in hand paid at or before the ensealing and delivery of these presents, the Assignor by these presents does grant, bargain, sell, convey, assign, transfer and set over unto Assignee without recourse and without covenant, representation or warranty in any respect, the loan documents referenced in Schedule A attached hereto and made a part hereof (the "**Loan Documents**") and all of Assignor's right, title and interest in, to and under the Loan Documents, and all of Assignor's right, title and interest, if any, in, to and under all other documents executed and/or delivered in connection with the loan evidenced and/or secured by the Loan Documents (the "**Loan**"), including, without limitation, all of Assignor's right, title and interest in the Loan and any collateral, security, certificates of deposit, letters of credit, performance bonds, demands, causes of action, all related certificates, bank accounts, operating accounts, reserve accounts, escrow accounts and other accounts, opinions, financial statements of the Borrower (as defined in Schedule A) and any guarantors and any other collateral arising out of and/or executed and/or delivered in or to or with respect to the Loan, all rights and benefits of Assignor related to the Loan Documents and such other documents, and all of Assignor's rights, title and interest in, to and under all claims and chooses in action related to the Asset and/or the Loan Documents.

Assignor represents and warrants that Schedule A represents a true, correct and complete list of all material Loan Documents delivered in connection with the Loan, that true counterpart originals of the Loan Documents have been delivered to Assignor in connection with the Loan, that true counterpart originals of the Loan Documents have been delivered by Assignor to Assignee (or to a specified custodian to be held on behalf of Assignee), that Assignor currently owns the Loan Documents and the related rights described above and that the Loan Documents and the related rights described above are not, and have not been, pledged, nor assigned, to another party and are not otherwise encumbered, that the Loan Documents have not been amended, modified, supplemented or restated, except as set forth on Schedule A, that, to Assignor's knowledge, there currently exists no default under any of the Loan Documents, that Assignor is duly formed and is validly existing under the laws of the jurisdiction under which it was formed with full power to execute and deliver this Assignment, and that all actions necessary to authorize the execution, delivery, and performance of this Assignment on behalf of Assignor have been duly taken, and all such actions continue in full force and effect as of the date hereof. Assignor hereby indemnifies Assignee for any claim made by the borrower for any additional interest paid on the Loan to Assignor prior to the date hereof.

TO HAVE AND TO HOLD unto Assignee, its successors, and assigns forever.

63089009

This Assignment shall be governed by the laws of the State of New York without giving effect to the conflict of laws principles thereof.

This Assignment may be executed by one or more parties to this Assignment in any number of counterparts and all said counterparts taken together shall be deemed to constitute one and the same instrument.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

IN WITNESS WHEREOF, Assignor and Assignee caused these presents to be duly executed as of the day and year first written above.

ASSIGNOR:

**SILVERPEAK REAL ESTATE FINANCE LLC**, a Delaware limited liability company

By: _____

Name: Peter M. Tzelios

Title:   Authorized Signatory

63089009

**ASSIGNEE:**

**SPREF WH III LLC,**
a Delaware limited liability company


By: _____
    Name: Peter M. Tzelios
    Title:  Authorized Signatory

<u>Schedule A</u>

**Loan Documents**

*(All documents are dated as of October 30, 2015 unless otherwise indicated.)*

## LOAN DOCUMENTS

1.  Loan Agreement made by and between Silverpeak Real Estate Finance LLC ("<u>Lender</u>") and Horsham Property Associates, LP ("<u>Borrower</u>").

2.  $28,000,000 Promissory Note made by Borrower paid to the order of Lender.

3.  Mortgage, Assignment of Leases and Rents and Security Agreement made by Borrower, to Lender, to be recorded in Montgomery County, Pennsylvania.

4.  Assignment of Leases and Rents made by Borrower to Lender, to be recorded in Montgomery County, Pennsylvania.

5.  UCC-1 Financing Statement naming Borrower, as debtor, and Lender, as secured party, to be recorded in Montgomery County, Pennsylvania.

6.  UCC-1 Financing Statement naming Borrower, as debtor, and Lender, as secured party, to be filed with the Secretary of State of Pennsylvania.

7.  Assignment of Agreements, Licenses, Permits and Contracts made by Borrower to Lender.

8.  Consent and Subordination of Manager made by Endurance Real Estate Group, LLC to Lender, and agreed and consented to by Borrower.

9.  Clearing Account Agreement made by and among Firstrust Bank, Borrower and Lender

10. Side Letter regarding Clearing Account

11. Cash Management Agreement (Springing) made by and among Wells Fargo Bank, National Association, Borrower, and Lender.

12. Guaranty of Recourse Obligations made by William A. White and Benjamin I. Cohen, an individual, as guarantors in favor of Lender.

13. Certificate Re "Recycled" Special-Purpose Entity made by Borrower.

# EXHIBIT E

## ALLONGE

This Allonge is attached to and forms a part of that certain Promissory Note, dated as of October ___, 2015, made by **HORSHAM PROPERTY ASSOCIATES, LP,** a Pennsylvania limited partnership, to **SILVERPEAK REAL ESTATE FINANCE LLC,** a Delaware limited liability company ("**Assignor**") in the original principal amount of **[TWENTY-EIGHT MILLION] AND NO/100 DOLLARS $[28,000,000]**.

Pay to the order of **SPREF WH III LLC,** a Delaware limited liability company, without any recourse to or representation or warranty, express or implied, by Assignor.

Dated as of the _____ day of October, 2015.

[Remainder of page intentionally left blank; signature page follows]

63089009

**SILVERPEAK REAL ESTATE FINANCE LLC**, a Delaware limited liability company

By: _____

   Name:  Peter M. Tzelios
   Title:   Authorized Signatory

# EXHIBIT F

 

**MTG BK 14041 PG 01873 to 01878**
INSTRUMENT # : 2015085708
RECORDED DATE: 11/10/2015 01:07:27 PM



3271650-0016O

**RECORDER OF DEEDS**
**MONTGOMERY COUNTY**
*Nancy J. Becker*

One Montgomery Plaza
Swede and Airy Streets ~ Suite 303
P.O. Box 311 ~ Norristown, PA 19404
Office: (610) 278-3289 ~ Fax: (610) 278-3869

**MONTGOMERY COUNTY ROD**

| OFFICIAL RECORDING COVER PAGE | | Page 1 of 6 |
|---|---|---|
| **Document Type:** Mortgage Assignment | **Transaction #:** | 3292411 - 3 Doc(s) |
| **Document Date:** 11/03/2015 | **Document Page Count:** | 5 |
| **Reference Info:** | **Operator Id:** | sford |

| **RETURN TO:** (Simplifile) | **PAID BY:** |
|---|---|
| Land Services USA (West Chester 2) | LAND SERVICES USA WEST CHESTER 2 |
| 1 S Church Street | |
| West Chester, PA 19382 | |
| (610) 429-3145 | |

**\* PROPERTY DATA:**

| Parcel ID #: | 36-00-09946-00-8 | 36-00-09872-04-6 |
|---|---|---|
| Address: | 425 PRIVET RD | 200 PRECISION RD |
| | PA | PA |
| Municipality: | Horsham Township (100%) | Horsham Township (100%) |
| School District: | Hatboro-Horsham | Hatboro-Horsham |

**\* ASSOCIATED DOCUMENT(S):**
MTG BK 14037 PG 01117

| **CONSIDERATION/SECURED AMT:** 0.00 | MTG BK 14041 PG 01873 to 01878 |
|---|---|
| | Recorded Date: 11/10/2015 01:07:27 PM |

| **FEES / TAXES:** | | |
|---|---|---|
| Recording Fee:Mortgage Assignment | $76.00 | I hereby CERTIFY that this document is recorded in the Recorder of Deeds Office in Montgomery County, Pennsylvania. |
| Additional Pages Fee | $2.00 | |
| Additional Parcels Fee | $15.00 | |
| **Total:** | **$93.00** | |



Nancy J. Becker
Recorder of Deeds

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

11/10/2015 01:07:27 PM                    MTG  BK 14041  PG 01874                              MONTCO

PREPARED BY AND                    MONTGOMERY COUNTY COMMISSIONERS REGISTRY
UPON RECORDATION                   36-00-09946-00-8   HORSHAM TOWNSHIP
RETURN TO:                         425 PRIVET RD
                                   HORSHAM PROPERTY ASSOCIATES LP         $15.00
                                   B 012 L  U 062  4330 11/10/2015           CS

Kaye Scholer LLP
250 West 55th Street               MONTGOMERY COUNTY COMMISSIONERS REGISTRY
New York, New York 10019           36-00-09872-04-8   HORSHAM TOWNSHIP
Attention: Stephen Gliatta, Esq.   200 PRECISION RD
                                   HORSHAM PROPERTY ASSOCIATES LP         $15.00
                                   B 012 L  U 072  3340 11/10/2015           CS

## ASSIGNMENT AND ASSUMPTION OF INTEREST
## UNDER MORTGAGE, ASSIGNMENT OF LEASES AND RENTS
## AND SECURITY AGREEMENT

Dated November 3, 2015, but made effective as of the 4th day of November, 2015.

FOR VALUE RECEIVED, SILVERPEAK REAL ESTATE FINANCE LLC, a Delaware limited liability company ("Assignor"), assigns, conveys, grants, sets over and transfers to SPREF WH III LLC, a Delaware limited liability company ("Assignee"), all of Assignor's right, title and interest, if any, in and to that certain Mortgage, Assignment of Leases and Rents and Security Agreement by HORSHAM PROPERTY ASSOCIATES, LP, a Pennsylvania limited partnership ("Borrower"), to Assignor, dated as of October 30, 2015, and recorded on November 2, 2015 in the land records of Montgomery County, State of Pennsylvania as MTG BK 14037 PG 01117 to 011337 (the "Security Instrument"), such Security Instrument encumbering premises described therein located in Montgomery County, State of Pennsylvania as more particularly described in Exhibit A attached hereto;

TOGETHER WITH all of Assignor's right, title and interest, if any, in and to all notes and contracts described or referred to in the Security Instrument, all guarantees of the Security Instrument, all assumptions of the Security Instrument, the money due and to become due thereon with interest and all contract rights accrued or to accrue under the Security Instrument.

Assignee assumes all liabilities and obligations of Assignor arising under the Security Instrument on and after the date hereof.

This Assignment and Assumption of Interest Under Mortgage, Assignment of Leases and Rents and Security Agreement (this "Assignment and Assumption") will be binding on and inure to the benefit of Assignor and Assignee and their respective successors and assigns.

[SIGNATURE PAGE FOLLOWS]

63089009

11/10/2015 01:07:27 PM          MTG  BK 14041     PG 01875                              MONTCO

This Assignment and Assumption may be executed in one or more counterparts, each of which when so executed and delivered shall be deemed an original, but all of which taken together shall constitute but one and the same instrument.

SILVERPEAK REAL ESTATE FINANCE
LLC, a Delaware limited liability company

By: _____
Name: Peter M. Tzelios
Title: Authorized Signatory

## ACKNOWLEDGMENT

STATE OF NEW YORK     :
                      :SS
COUNTY OF NEW YORK  :

On this __3rd__ day of __November__, 2015, before me, Ryan Supple, a Notary Public, personally appeared Peter M. Tzelios, as authorized signatory of Silverpeak Real Estate Finance LLC, a Delaware limited liability company, who I am satisfied is the person who executed the foregoing instrument; and he/she acknowledged that the executed the foregoing instrument as the act of the limited liability company and that he/she was authorized to execute the foregoing instrument on behalf of the limited liability company.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_____
Notary Public

Commission expires: __8-20-16__

63089009

11/10/2015 01:07:27 PM          MTG  BK 14041      PG 01876                    MONTCO

SPREF WH III LLC,
a Delaware limited liability company

By: _____
Name: Peter M. Tzelios
Title:  Authorized Signatory


## ACKNOWLEDGMENT

STATE OF NEW YORK      :
                       :SS
COUNTY OF NEW YORK  :

On this _3rd_ day of ___November___, 2015, before me, Ryan Supple, a Notary Public, personally appeared Peter M. Tzelios, as authorized signatory of Silverpeak Real Estate Finance LLC, a Delaware limited liability company, who I am satisfied is the person who executed the foregoing instrument; and he/she acknowledged that the executed the foregoing instrument as the act of the limited liability company and that he/she was authorized to execute the foregoing instrument on behalf of the limited liability company.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_____
Notary Public

Commission expires: _8-20-16_____

63089009

11/10/2015  01:07:27 PM              MTG  BK 14041        PG 01877                          MONTCO

**Exhibit A**
**Legal Description**

ALL THAT CERTAIN tract of ground, Hereditaments and Appurtances, Situate in Horsham Township, Montgomery County, Pennsylvania at 200 Precision Road (Tax Map Block 12, Unit 72) being shown on a plan entitled "ALTA/ASCM Land Title Survey Plan — 200 Precision Road" prepared for Liberty Property Limited Partnership by Fore Site Land Services, Inc., dated April 24, 2000 and being more particularly described as follows:

BEGINNING at a point, a concrete monument, on the Northwesterly side of Precision Road (60 feet wide) a corner of lands of Innkeepers USA LP (Tax Map Block 12, Unit 66); thence from said point of beginning along the Northwesterly side of Precision Road South 40 degrees 15 minutes 0 seconds West 876.35 feet, crossing a portion of the head of a 20 feet wide drainage easement and also crossing the head of another 20 feet wide drainage easement and extending partly along the Southeasterly side of another 20 feet wide drainage easement to an iron pipe, a point of curve, on the Northeasterly side of a cul-de-sac at the terminus of Precision Road; thence extending Southwestwardly and Northwestwardly along the Northeasterly side of the cul-de-sac at the terminus of Precision road on the arc of a circle curving to the right having a radius of 30 feet, an arc distance of 26.62 feet, through a central angle of 50 degrees 50 minutes 0 seconds to an iron pipe, a point of reverse curve; thence extending Northwestwardly and Southwestwardly along the portion of the head of a 20 feet wide drainage and utility easement, on the arc of a circle curving to the left having a radius of 65 feet, an arc distance of 57.67 feet, through a central angle of 50 degrees 50 minutes 0 seconds to a point in line with lands of Precision Drive Acquisition Corp Retired persons Serv, Inc. (Tax Map Block 12, Unit 71; thence extending along said lands of Precision Drive Acquisition Corp, Retired Persons Serv, Inc. North 49 degrees 45 minutes 0 seconds West 425 feet through a 20 feet wide drainage and utility easement, to an iron pipe in line with the lands of U.S. Can Co. (Tax Map Block 12, Unit 61); thence extending partly along said lands of U.S. Can Co. and partly along lands of Bowe 3 Partners (Tax Map Block 12, Unit 62) North 40 degrees 15 minutes 0 seconds East 950 feet, through a 20 feet wide drainage and utility easement to a concrete monument in line with lands of Innkeepers USA LP (Tax Map Block 12, Unit 66); thence extending along said lands of Innkeepers USA LP South 49 degrees 45 minutes 0 seconds East 460 feet, through a 20 feet wide drainage easement to a concrete monument, the point and place of beginning.

BEING known as 200 Precision Road.

BEING Tax Parcel No.: 36-00-09872-04-6.

6308 0809

ALL THAT CERTAIN tract or piece of land with the buildings and improvements thereon erected, hereditaments and appurtances, situate in the Township of Horsham, County of Montgomery and Commonwealth of Pennsylvania, as shown on "as Built Survey" prepared for Prosser Industries, Inc., dated October 24, 1985, as prepared by C. Raymond Weir Associates, Inc., Civil Engineers and Surveyors, Ambler, Pennsylvania, bounded and described as follows:

BEGINNING at a point, on the Southeasterly right-of-way line of Privet Road, 46.5 feet wide, that is to say 16.5 feet to the Northwest and 30 feet to the Southeast at the centerline of the original 33 foot road; said point of beginning is also a corner of this and land of a MIGS, a unit of general signal, said point of beginning is located South 50 degrees, 20 minutes East 30 feet from a point on the centerline of Privet Road, aforesaid, which last said point is located South 40 degrees 30 minutes West 536.95 feet from the intersection of the centerline of Privet Road with the centerline of Horsham Road, 50 feet wide to the Northwest and 62 feet to the Southeast, that is to say in the Southeasterly portion 25 feet to the Northeast and 37 feet to the Southwest of the centerline of the 50 foot road; thence from the point of beginning, along a MIGS Unit of general signal, and along the Northeasterly right-of-way line of a 20 foot wide drainage easement, South 50 degrees 20 minutes East 814.10 feet to a stone monument found; a corner of this and Bridgeport Textron; thence along the same and along the centerline of a 20 foot wide drainage and utility easement, South 40 degrees 15 minutes West 700 feet to a stone monument found, a corner of this and land of Pennsylvania Can Company; thence along the same and along the Southwesterly right-of-way of a 20 foot wide drainage easement, and traversing a 2 foot wide storm drainage ditch with riprap that encroaches outside of the easement, North 50 degrees 20 minutes West 817.15 feet to a stone monument found on the aforementioned Southeasterly right-of-way line of Privet Road 46.5 feet wide, thence along the same, North 40 degrees 30 minutes east 700.04 feet to a stone monument found at the point and place of beginning.

BEING known as 425 Privet Road.

BEING Tax Parcel No.: 36-00-09946-00-8.

63089009

# EXHIBIT G

3165

## GENERAL ASSIGNMENT

As of the 24th day of May, 2016, SPREF WH III LLC, a Delaware limited liability company, having an address at 40 West 57th Street, 29th Floor, New York, NY 10019, ("Assignor") hereby endorses, assigns, sells, transfers and delivers to WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE REGISTERED HOLDERS OF WELLS FARGO COMMERCIAL MORTGAGE TRUST 2016-C34, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2016-C34, having an address at 1100 North Market Street, Wilmington, DE 19890 ("Assignee"), its successors, participants and assigns, without recourse or warranty, all right, title and interest of Assignor in and to the Loan (as defined below) and all other agreements, including but not limited to guaranty agreements, and certificates and documents entered into or delivered in connection with the Loan (as the same have heretofore been amended, modified, restated, supplemented, renewed or extended).

Additionally, Assignor hereby assigns all other documents and instruments relating to the Loan, including, without limitation, all certificates and receipts executed by Borrower, all appraisal reports, all environmental, engineering and other reports relating to the operation or condition of the property securing said Loan, and all casualty insurance policies, liability insurance policies, title insurance policies and opinions of counsel (as the same have heretofore been amended, modified, restated, supplemented, renewed or extended).

This assignment is given in connection with, and in consideration of, Assignee's purchase of a loan ("Loan") made by SILVERPEAK REAL ESTATE FINANCE LLC, a Delaware limited liability company to HORSHAM PROPERTY ASSOCIATES, LP, a Pennsylvania limited partnership ("Borrower"), dated as of October 30, 2015, in the original principal amount of $28,000,000.00 as more specifically described in the agreements, certificates and documents entered into in connection with the Loan.

Assignor agrees to execute and deliver to Assignee such additional documents, instruments or agreements as may be necessary or appropriate to effectuate the purposes of this assignment.

Assignor has caused this assignment to be executed this _____ day of May, 2016.

SPREF WH III LLC, a Delaware limited liability company

By: _____
Name: Doug Tiesi
Title:   Chief Executive Officer

Reference No.: 3413M.001-002
Matter Name: 200 Precision & 425 Privet Portfolio
Pool: WFCM 2016-C34

# EXHIBIT H

3165

**ALLONGE**

ALLONGE to that certain Promissory Note dated as of October 30, 2015 in the original principal amount of $28,000,000.00, executed by HORSHAM PROPERTY ASSOCIATES, LP, a Pennsylvania limited partnership, payable to the order of SILVERPEAK REAL ESTATE FINANCE LLC, a Delaware limited liability company.

Pay to the order of WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE REGISTERED HOLDERS OF WELLS FARGO COMMERCIAL MORTGAGE TRUST 2016-C34, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2016-C34, without recourse, representation or warranty.

Dated as of the _____ day of May, 2016

**SPREF WH III LLC, a Delaware limited liability company**

By: _____
Name: Doug Tiesi
Title:   Chief Executive Officer

Reference No.: 3413M.001-002
Matter Name: 200 Precision & 425 Privet Portfolio
Pool: WFCM 2016-C34

# EXHIBIT I

 

| | |
|---|---|
| | **MTG BK 14162 PG 01157 to 01163**<br>INSTRUMENT # : 2016049203<br>RECORDED DATE: 07/07/2016 09:20:45 AM |



3355780-0021R

**RECORDER OF DEEDS**
**MONTGOMERY COUNTY**
*Jeanne Sorg*

One Montgomery Plaza
Swede and Airy Streets ~ Suite 303
P.O. Box 311 ~ Norristown, PA 19404
Office: (610) 278-3289 ~ Fax: (610) 278-3869

**MONTGOMERY COUNTY ROD**

| OFFICIAL RECORDING COVER PAGE | Page 1 of 7 |
|---|---|

| | | | |
|---|---|---|---|
| **Document Type:** | Mortgage Assignment | **Transaction #:** | 3406391 - 3 Doc(s) |
| **Document Date:** | 05/24/2016 | **Document Page Count:** | 6 |
| **Reference Info:** | | **Operator Id:** | estaglia |

| **RETURN TO:** (Simplifile)<br>Anderson, McCoy & Orta<br>100 N. Broadway, Suite 2600<br>Oklahoma City, OK 73102<br>(405) 236-0003 | **PAID BY:**<br>ANDERSON MCCOY & ORTA |
|---|---|

**\* PROPERTY DATA:**

| | | |
|---|---|---|
| Parcel ID #: | 36-00-09872-04-6 | 36-00-09946-00-8 |
| Address: | 200 PRECISION RD | 425 PRIVET RD |
| | PA | PA |
| Municipality: | Horsham Township (100%) | Horsham Township (100%) |
| School District: | Hatboro-Horsham | Hatboro-Horsham |

**\* ASSOCIATED DOCUMENT(S):**
MTG BK 14037 PG 01117

| CONSIDERATION/SECURED AMT: | 0.00 | MTG BK 14162 PG 01157 to 01163 |
|---|---|---|
| | | Recorded Date: 07/07/2016 09:20:45 AM |

**FEES / TAXES:**

| | |
|---|---|
| Recording Fee:Mortgage Assignment | $76.00 |
| Additional Pages Fee | $4.00 |
| Additional Parcels Fee | $15.00 |
| **Total:** | $95.00 |

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office in
Montgomery County, Pennsylvania.



Jeanne Sorg
Recorder of Deeds

Rev1 2016-01-29

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT
NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION

07/07/2016 09:20:45 AM          MTG BK 14162 PG 01158                    MONTCO

DOCUMENT PREPARED BY AND WHEN RECORDED, RETURN TO:
ANDERSON, McCOY & ORTA, P.C.
100 North Broadway, Suite 2600
Oklahoma City, Oklahoma 73102
Telephone: 888-236-0007

425 Privet Road and 200 Precision Drive, Horsham Township PA
Parcel Number(s): 36-00-09872-04-6; 36-00-09946-00-8
County of Montgomery
State of Pennsylvania

## ASSIGNMENT OF MORTGAGE, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT

SPREF WH III LLC, a Delaware limited liability company
(Assignor)

to

WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT
OF THE REGISTERED HOLDERS OF WELLS FARGO COMMERCIAL MORTGAGE
TRUST 2016-C34, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2016-C34
(Assignee)

Effective as of May 24, 2016

I do certify that the precise address of the within named Assignee is as it appears in the body of
this instrument.

Nick Barzellone

MONTGOMERY COUNTY COMMISSIONERS REGISTRY          MONTGOMERY COUNTY COMMISSIONERS REGISTRY
36-00-09872-04-6   HORSHAM TOWNSHIP               36-00-09946-00-8   HORSHAM TOWNSHIP
200 PRECISION RD                                  425 PRIVET RD
HORSHAM PROPERTY ASSOCIATES LP       $15.00       HORSHAM PROPERTY ASSOCIATES LP       $15.00
B 012 L  U 072  3340 07/07/2016         ND        B 012 L  U 062  4330 07/07/2016         ND

07/07/2016 09:20:45 AM          MTG  BK 14162      PG 01159                    MONTCO

## ASSIGNMENT OF MORTGAGE, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT

Effective as of the 24th day of May, 2016, SPREF WH III LLC, a Delaware limited liability company, having an address at 40 West 57th Street, 29th Floor, New York, NY 10019, ("Assignor"), as the holder of the instrument hereinafter described and for valuable consideration hereby endorses, assigns, sells, transfers and delivers to WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE REGISTERED HOLDERS OF WELLS FARGO COMMERCIAL MORTGAGE TRUST 2016-C34, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2016-C34, having an address at 1100 North Market Street, Wilmington, DE 19890, ("Assignee"), its successors, participants and assigns, without recourse or warranty, all right, title and interest of Assignor in and to that certain:

MORTGAGE, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT made by HORSHAM PROPERTY ASSOCIATES, LP, a Pennsylvania limited partnership to SILVERPEAK REAL ESTATE FINANCE LLC, a Delaware limited liability company dated as of October 30, 2015 and recorded on November 2, 2015, as Instrument Number 2015083324, in Mortgage Book 14037, Page 01117 in the Recorder's Office of Montgomery County, Pennsylvania ("Recorder's Office") (as the same has heretofore been amended, modified, restated, supplemented, renewed or extended) ("Mortgage"), securing payment of note(s) of even date therewith, in the original principal amount of $28,000,000.00, and creating a first lien on the property described in Exhibit A attached hereto and by this reference made a part hereof.

The Mortgage was assigned to Assignor, by assignment instrument(s) dated as of November 4, 2015 and recorded on November 10, 2015, as Instrument Number 2015085708, in Mortgage Book 14041, Page 01873, in the Recorder's Office.

Together with any and all notes and obligations therein described, the debt and claims secured thereby and all sums of money due and to become due thereon, with interest provided for therein, and hereby irrevocably appoints Assignee hereunder its attorney to collect and receive such debt, and to foreclose, enforce and satisfy the foregoing the same as it might or could have done were these presents not executed, but at the cost and expense of Assignee.

Together with any and all other liens, privileges, security interests, rights, entitlements, equities, claims and demands as to which Assignor hereunder possesses or to which Assignor is otherwise entitled as additional security for the payment of the notes and other obligations described herein.

Reference No.: 3413M.001-002
Matter Name: 200 Precision & 425 Privet Portfolio
Pool: WFCM 2016-C34

07/07/2016 09:20:45 AM                    MTG  BK 14162      PG 01160                                    MONTCO

This Assignment shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

[SIGNATURE(S) ON THE FOLLOWING PAGE]

Reference No.: 3413M.001-002
Matter Name: 200 Precision & 425 Privet Portfolio
Pool: WFCM 2016-C34

07/07/2016 09:20:45 AM                MTG  BK 14162        PG 01161                              MONTCO

IN WITNESS WHEREOF, Assignor has duly executed this Assignment as of the _2ᵉ_ day of June, 2016.

SPREF WH III LLC, a Delaware limited
liability company

By: _____
Name: Michael Schulte
Title:  Authorized Signatory

STATE OF NEW YORK                    §
                                     §
COUNTY OF _____                 §

On this _40_ day of June, 2016, before me, the undersigned, a Notary Public in said state, personally appeared Michael Schulte, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity as Authorized Signatory of SPREF WH III LLC, a Delaware limited liability company, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Signature: _____
            Notary Public

My Commission Expires:

CHRISTINA SEIDE
Notary Public, State of New York
Registration #01SE6330097
Qualified in New York County
Commission Expires Sept. 8, 2019

Reference No.: 3413M.001-002
Matter Name: 200 Precision & 425 Privat Portfolio
Pool: WFCM 2016-C34

07/07/2016  09:20:45 AM          MTG  BK 14162       PG 01162                    MONTCO

EXHIBIT A

LEGAL DESCRIPTION

ALL THAT CERTAIN tract of ground, Hereditaments and Appurtances, Situate in Horsham Township, Montgomery County, Pennsylvania at 200 Precision Road (Tax Map Block 12, Unit 72) being shown on a plan entitled "ALTA/ASCM Land Title Survey Plan — 200 Precision Road" prepared for Liberty Property Limited Partnership by Fero Site Land Services, Inc., dated April 24, 2000 and being more particularly described as follows:

BEGINNING at a point, a concrete monument, on the Northwesterly side of Precision Road (60 feet wide) a corner of lands of Innkeepers USA LP (Tax Map Block 12, Unit 66); thence from said point of beginning along the Northwesterly side of Precision Road South 40 degrees 15 minutes 0 seconds West 876.35 feet, crossing a portion of the head of a 20 feet wide drainage easement and also crossing the head of another 20 feet wide drainage easement and extending partly along the Southeasterly side of another 20 feet wide drainage easement to an iron pipe, a point of curve, on the Northeasterly side of a cul-de-sac at the terminus of Precision Road; thence extending Southwestwardly and Northwestwardly along the Northeasterly side of the cul-de-sac at the terminus of Precision road on the arc of a circle curving to the right having a radius of 30 feet, an arc distance of 26.62 feet, through a central angle of 50 degrees 50 minutes 0 seconds to an iron pipe, a point of reverse curve; thence extending Northwestwardly and Southwestwardly along the portion of the head of a 20 feet wide drainage and utility easement, on the arc of a circle curving to the left having a radius of 65 feet, an arc distance of 57.67 feet, through a central angle of 50 degrees 50 minutes 0 seconds to a point in line with lands of Precision Drive Acquisition Corp Retired persons Serv, Inc. (Tax Map Block 12, Unit 71; thence extending along said lands of Precision Drive Acquisition Corp, Retired Persons Serv, Inc. North 49 degrees 45 minutes 0 seconds West 425 feet through a 20 feet wide drainage and utility easement, to an iron pipe in line with the lands of U.S. Can Co. (Tax Map Block 12, Unit 61); thence extending partly along said lands of U.S. Can Co. and partly along lands of Bowe 3 Partners (Tax Map Block 12, Unit 62) North 40 degrees 15 minutes 0 seconds East 950 feet, through a 20 feet wide drainage and utility easement to a concrete monument in line with lands of Innkeepers USA LP (Tax Map Block 12, Unit 66); thence extending along said lands of Innkeepers USA LP South 49 degrees 45 minutes 0 seconds East 460 feet, through a 20 feet wide drainage easement to a concrete monument, the point and place of beginning.

BEING known as 200 Precision Road.

BEING Tax Parcel No.: 36-00-09872-04-6.

Reference No.: 3413M.001-002
Matter Name: 200 Precision & 425 Privet Portfolio
Pool: WFCM 2016-C34

07/07/2016  09:20:45 AM                    MTG  BK 14162        PG 01163                              MONTCO

ALL THAT CERTAIN tract or piece of land with the buildings and improvements thereon erected, hereditaments and appurtances, situate in the Township of Horsham, County of Montgomery and Commonwealth of Pennsylvania, as shown on "as Built Survey" prepared for Prosser Industries, Inc., dated October 24, 1985, as prepared by C. Raymond Weir Associates, Inc., Civil Engineers and Surveyors, Ambler, Pennsylvania, bounded and described as follows:

BEGINNING at a point, on the Southeasterly right-of-way line of Privet Road, 46.5 feet wide, that is to say 16.5 feet to the Northwest and 30 feet to the Southeast at the centerline of the original 33 foot road; said point of beginning is also a corner of this and land of a MIGS, a unit of general signal, said point of beginning is located South 50 degrees, 20 minutes East 30 feet from a point on the centerline of Privet Road, aforesaid, which last said point is located South 40 degrees 30 minutes West 536.95 feet from the intersection of the centerline of Privet Road with the centerline of Horsham Road, 50 feet wide to the Northwest and 62 feet to the Southeast, that is to say in the Southeasterly portion 25 feet to the Northeast and 37 feet to the Southwest of the centerline of the 50 foot road; thence from the point of beginning, along a MIGS Unit of general signal, and along the Northeasterly right-of-way line of a 20 foot wide drainage easement, South 50 degrees 20 minutes East 814.10 feet to a stone monument found; a corner of this and Bridgeport Textron; thence along the same and along the centerline of a 20 foot wide drainage and utility easement, South 40 degrees 15 minutes West 700 feet to a stone monument found, a corner of this and land of Pennsylvania Can Company; thence along the same and along the Southwesterly right-of-way of a 20 foot wide drainage easement, and traversing a 2 foot wide storm drainage ditch with riprap that encroaches outside of the easement, North 50 degrees 20 minutes West 817.15 feet to a stone monument found on the aforementioned Southeasterly right-of-way line of Privet Road 46.5 feet wide, thence along the same, North 40 degrees 30 minutes east 700.04 feet to a stone monument found at the point and place of beginning.

BEING known as 425 Privet Road.

BEING Tax Parcel No.: 36-00-09946-00-8.

Reference No.: 3413M.001-002
Matter Name: 200 Precision & 425 Privet Portfolio
Pool: WFCM 2016-C34

# EXHIBIT J

 **LNR**
Partners, LLC

<strong>VIA OVERNIGHT MAIL</strong>

December 16, 2019

HORSHAM PROPERTY ASSOCIATES, LP
4 Radnor Corporate Center, Suite 105
Radnor, PA 19087

Attention: Benjamin I. Cohen and William A. White

Re:   **Notice of Default**: Loan ("Loan") made to HORSHAM PROPERTY
ASSOCIATES, LP ("Borrower"), evidenced by a note in the original principal amount of
$28,000,000.00, dated   10/30/15 ("Note"), now held by Wilmington Trust, National
Association, as Trustee for the benefit of the registered holders of Wells Fargo
Commercial   Mortgage   Trust   2016-C34,   Commercial   Mortgage   Pass-Through
Certificates, Series 2016-C34 ("Lender") and specially serviced by LNR Partners, LLC
("Special   Servicer"),   and   secured   by   the   mortgage/deed   of   trust   ("Mortgage")
encumbering property known as 425 Privet Road, located at 425 Privet Road, Horsham,
PA 19044 and 200 Precision Drive, located at 200 Precision Drive, Horsham, PA 19044
("Property"), and certain other documents (collectively, "Loan Documents")
Loan No.: M301741112 / Reference No.: SS49544
Dear Borrower:

As the Special Servicer of the above referenced Loan, we are empowered to act on behalf
of Lender in connection with the Loan.

This letter shall serve as notice that Borrower is in default under the Note and other Loan
Documents by virtue of, among other things, its failure to pay all amounts when due
thereunder.   The aggregate amount due and payable by Borrower under the Loan
Documents will be calculated for you upon request made to the undersigned at LNR
Partners, 1601 Washington Avenue, Suite 700, Miami Beach, FL 33139 (Fax - 305-695-
5601).  Lender will take all such actions as it deems appropriate to protect its interest in
the Loan and to collect the debt thereunder, including, without limitation, seeking
foreclosure and/or reconveyance of its security under the Loan Documents without
further notice or demand except as required pursuant to state law and the Loan
Documents.  In the event any such actions are taken, Lender will also seek to recover its
additional costs and expenses, including attorney's fees and court costs, incurred in any
collection efforts.

Further, in the event Borrower makes any subsequent payment of any amount less than
all of the indebtedness due under the Loan ("Partial Payment"), Lender will apply such
Partial Payment to the indebtedness owing under the Loan Documents as a partial
payment.  No such Partial Payment or the acceptance thereof by Lender shall constitute
or be deemed or construed as a waiver of any default under the Loan Documents.  In
addition, any Partial Payment or the acceptance of any Partial Payment of Lender shall
not constitute or be deemed or construed as a cure of any existing default under the Loan

Documents, a modification of the Loan Documents or the terms of this letter, a reinstatement or satisfaction of the Loan, an election of remedies by Lender, or a waiver, modification, relinquishment or forbearance by Lender of any of Lender's rights or remedies under the Loan Documents or at law or in equity, all of which rights and remedies Lender hereby expressly reserves.

Neither this notice, any discussions by Lender or Special Servicer with Borrower or its representatives, nor Lender's acceptance of payment of less than the full amount due and payable under the Loan Documents, constitutes (a) a waiver by Lender or Special Servicer of any other default by Borrower under the Loan Documents, whether or not referred to herein or in any prior notice of default, (b) an election of remedies with respect to any such default by Special Servicer or Lender, each of which reserves all rights and remedies under law and under the Loan Documents, (c) a waiver, modification, relinquishment or forbearance by Lender or Special Servicer of any right or remedy under the Loan Documents or under law, all of which are reserved by Lender and Special Servicer, (d) a reinstatement of the Loan, or (e) a modification of any of the Loan Documents.

No modification of the Loan Documents and no other agreement or understanding of any nature shall be deemed to have been entered into by or be binding on Lender or Special Servicer unless and until Lender and Borrower have reached agreement on all issues, and such entire agreement shall have been reduced to a written document that expressly states that it modifies the Loan Documents and is duly executed by Lender, Borrower and any guarantor of the Loan. Oral agreements, emails, memoranda of meetings, summaries of proposed terms, etc., shall have no effect whatsoever and shall not be binding on Lender or Special Servicer.

Very truly yours,

By: _____
    Name: Melisa Vis
    Asset Manager

cc:   Wells Fargo Bank, N.A.
      LNR Partners/Loan Servicing

**ATTENTION TO ANY DEBTOR IN BANKRUPTCY OR ANY DEBTOR WHO HAS RECEIVED A DISCHARGE IN BANKRUPTCY OR WHO MAY HAVE PAID OR SETTLED, OR OTHERWISE NOT BE OBLIGATED UNDER, THE LOAN: Please be advised that this letter constitutes neither a demand for payment of the Loan nor a notice of personal liability to nor action against any recipient hereof who might have received a discharge of the Loan in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code, or who has paid or settled or is otherwise not obligated by law for the Loan.**

12/17/2019

FedEx Ship Manager - Print Your Label(s)



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning**: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

# EXHIBIT K

# Ballard Spahr
LLP

----------------------

1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
TEL 215.665.8500
FAX 215.864.8999
www.ballardspahr.com

Raymond A. Quaglia
Tel: 215.864.8530
Fax: 215.864.8999
quaglia@ballardspahr.com

December 23, 2019

*Via FedEx*

Horsham Property Associates, LP
4 Radnor Corporate Center, Suite 105
Radnor, PA 19087
Attention: Benjamin I Cohen and William A. White

Re:  NOTICE OF ACCELERATION of the loan to Horsham Property Associates, LP, a
Pennsylvania limited partnership ("Borrower"), in the original principal amount of
$28,000,000 (the "Loan"), evidenced by the Promissory Note in the principal amount of
$28,000,000 dated October 30, 2015 (the "Note"), given by Borrower to Silverpeak Real
Estate Finance LLC ("Original Lender"), and the Loan Agreement dated as of October 30,
2015 (the "Loan Agreement"), between Borrower and Original Lender, and secured by the
Mortgage, Assignment of Leases and Rents and Security Agreement effective as of
October 30, 2015 (the "Mortgage"), from Borrower to Original Lender (the Note, the Loan
Agreement, the Mortgage and all other loan documents being collectively referred to herein as
the "Loan Documents"), the Loan Documents having been assigned to and being held by
Wilmington Trust, National Association, as Trustee for the benefit of the registered holders of
Wells Fargo Commercial Mortgage Trust 2016-C34, Commercial Mortgage Pass-Through
Certificates, Series 2016-C34 ("Lender")

Dear Borrower:

We are counsel to Lender and to LNR Partners, LLC ("LNR"), acting solely in its capacity as Special
Servicer on behalf of Lender. LNR is empowered to act on behalf of Lender in connection with the
Loan. Capitalized terms used and not defined herein shall be as defined in the Loan Documents.

Reference is made to the Notice of Default dated December 16, 2019 (the "Notice of Default"), issued
to Borrower by LNR, which notified Borrower that "Borrower is in default under the Note and other
Loan Documents by virtue of, among other things, its failure to pay all amounts when due thereunder."

The Mortgage provides that, upon the occurrence of any Event of Default, Lender "may take such
action . . . as it deems advisable to protect and enforce its rights against [Borrower] and in and to the
Mortgaged Property," including, *inter alia*, "declar[ing] the entire Debt to be immediately due and
payable." (Mortgage § 10(a)(i); *accord* Note at 1; Loan Agreement § 8.2.1.)

DMEAST #39764137 v1

Atlanta | Baltimore | Bethesda | Denver | Las Vegas | Los Angeles | New Jersey | New York | Philadelphia | Phoenix | Salt Lake City |
San Diego | Washington, DC | Wilmington | www.ballardspahr.com

Horsham Property Associates, LP
December 23, 2019
Page 2

PLEASE BE ADVISED THAT, AS OF THE DATE HEREOF, THE EVENT OF DEFAULT IDENTIFIED IN THE NOTICE OF DEFAULT HAS NOT BEEN CURED BY BORROWER AND IS CONTINUING.

PLEASE BE FURTHER ADVISED THAT, AS A RESULT OF THE OCCURRENCE AND CONTINUANCE OF THE EVENT OF DEFAULT DESCRIBED IN THE NOTICE OF DEFAULT, (A) THE DEBT SECURED BY THE MORTGAGE IS HEREBY ACCELERATED AND DECLARED TO BE IMMEDIATELY DUE AND PAYABLE, (B) DEMAND IS HEREBY MADE OF BORROWER FOR THE IMMEDIATE AND FULL PAYMENT OF THE DEBT, AND (C) INTEREST WILL CONTINUE TO ACCRUE AT THE DEFAULT RATE UNTIL THE DEBT IS PAID IN FULL.

Further, in the event Borrower makes any subsequent payment of any amount less than all of the indebtedness due under the Loan ("Partial Payment"), Lender will apply such Partial Payment to the indebtedness owing under the Loan Documents as a partial payment. No such Partial Payment or the acceptance thereof by Lender shall constitute or be deemed or construed as a waiver of any default under the Loan Documents. In addition, any Partial Payment or the acceptance of any Partial Payment of Lender shall not constitute or be deemed or construed as a cure of any existing default under the Loan Documents, a modification of the Loan Documents or the terms of this letter, a reinstatement or satisfaction of the Loan, an election of remedies by Lender, or a waiver, modification, relinquishment or forbearance by Lender of any of Lender's rights or remedies under the Loan Documents or at law or in equity, all of which rights and remedies Lender hereby expressly reserves.

This Notice is provided as a courtesy and is not intended and should not be misconstrued as an admission that any written notice is otherwise due to Borrower from Lender.

As there may be other existing or potential Events of Default, other than the Event of Default described in the Notice of Default, Lender continues to reserve and preserve any and all of its rights, remedies and powers under the Loan Documents and applicable law and in equity with regard to the Event of Default described in the Notice of Default and any other existing, potential or future Events of Default under the Loan Documents.

If you should you have any questions regarding this matter, including the full amount of the Obligations owed to Lender, please contact Melisa Vis at LNR at 305-695-5791, or via e-mail at mvis@lnrpartners.com, at LNR.

Sincerely,

Raymond A. Quaglia

RAQ/dms

cc:     Ms. Melisa Vis (via email)

DMEAST #39764137 v1

Horsham Property Associates, LP
December 23, 2019
Page 3


Ms. Michelle Feigenbaum (via email)

Kaplin Stewart Meloff Reiter & Stein, P.C. (via email and fax)
Union Meeting Corporate Center
910 Harvest Drive
P.O. Box 3037
Blue Bell, PA  19422
Attention: Maury B. Reiter, Esquire
Facsimile No. (610) 684-2025


ATTENTION TO ANY DEBTOR IN BANKRUPTCY OR ANY DEBTOR WHO HAS RECEIVED A DISCHARGE IN BANKRUPTCY OR WHO MAY HAVE PAID OR SETTLED OR OTHERWISE NOT BE OBLIGATED UNDER THE LOAN: Please be advised that this letter constitutes neither a demand for payment of the Loan, nor a notice of personal liability to, nor action against, any recipient hereof who may have received a discharge of the Loan in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code or has paid or settled or is otherwise not obligated by law for the Loan.